158 N.J. Super. 401 (1978)
386 A.2d 421
TOWNSHIP OF DOVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF DOVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND VILLAGES OF '76, A PARTNERSHIP, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1978.
Decided April 10, 1978.
*404 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Raymond A. Hayser, Director of Law, Dover Township Law Department, argued the cause for appellant (Mr. Joseph L. Foster, First Assistant Township Attorney, on the brief).
*405 Mr. John Paul Doyle argued the cause for respondent Board of Adjustment of the Township of Dover (Messrs. Doyle and Oles, attorneys).
Mr. John F. Russo argued the cause for respondent Villages of '76 (Messrs. Russo & Courtney, attorneys; Mr. Leonard W. Roeber on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The single issue before us is whether a municipal governing body has standing to challenge, by way of an action in lieu of prerogative writs, the grant by the municipality's board of adjustment of a bulk variance on the ground that the nature of the relief afforded by the board is so expansive in nature and impact as to have infringed upon the governing body's exclusive statutory power to zone and rezone. The trial judge, concluding that the governing body has no such standing, granted summary judgment dismissing the complaint of plaintiff Dover Township. See 149 N.J. Super. 497 (Law Div. 1977). We are constrained to reverse.
The meagre record before us includes, unfortunately, neither the municipality's zoning ordinance, its subdivision ordinance, nor its master plan, if any. Nor does it contain either a clear delineation of the size of the municipality in population or in area, or an indication of its land use patterns, actual or proposed. All that the record reveals in this context is that the township has among its various use districts a rural zone and an R-200 zone, in both of which single-family residential use is permitted, the rural zone use, however, being subject to a more restrictive limiting schedule. It further appears that "cluster" residential development[1] is permitted in both zones, although, again, the limiting *406 schedule for the rural zone is the more restrictive requiring, for example, a minimum lot area of 15,000 square feet and a maximum density of .85 lots per acre overall, as contrasted to the R-200 zone cluster requirements of a minimum of 9,000 square foot lots and a maximum overall density of two lots per acre. Neither the size of these zones, nor the nature or extent of their respective development, nor the percentage of total municipal land area each consists of appears in the record.
The controversy here, in this minimal factual setting, arises out of the development plans of defendant Villages of '76 (Villages), a partnership which owns an apparently as yet undivided 81-acre tract in the rural zone of the township. Villages applied to defendant Board of Adjustment of the Township of Dover (board) for a variance pursuant to the then applicable statute, N.J.S.A. 40:55-39(c), in order to develop the tract subject to the limitations applicable to cluster development in the R-200 zone rather than those applicable to such development in the rural zone. That variance would allow the construction of 162 homes rather than the maximum of some 94 homes otherwise prescribed. No objector appearing at the hearing, the board granted the relief sought by resolution which found that "because of the location of the property immediately adjacent to Route 9 and of the neighboring properties it would be unrealistic to expect the property to develop under the provisions of the rural zone for residential homes." The resolution further recited that the "principal [sic] of the cluster zoning would best be applied * * * by the reduction of the requirements of cluster zoning to conform with the R-200 zone," and that the relief granted would "conserve a vast amount of open space and provide proper housing for the residents of the Township of Dover." Finally, the resolution concluded, in paraphrase of N.J.S.A. 40:55-39(c), that the property presented "an exceptional situation or condition" which resulted in a "peculiar and exceptional practical difficulties to or an exceptional or undo [sic] hardship *407 upon the owner of such property" and, in the identical verbiage of the concluding sentence of N.J.S.A. 40:55-39, that the negative criteria of nonimpairment of the zone plan and no substantial detriment to the public good were met. The township's ensuing complaint challenging the board's action was, as we have noted, dismissed for lack of standing.
At the outset we note that the board's proceedings were conducted prior to the effective date of the Municipal Land Use Law of 1975, N.J.S.A. 40:55D-1 et seq., and all parties, as well as the judge, were of the view that the former law, N.J.S.A. 40:55-39, therefore applied. Assuming that view to be correct, we nevertheless conclude that the problem here posed is essentially unaffected and may even have been intensified by the significant changes made by the 1975 act in the variance procedure. The 1975 act retains, in N.J.S.A. 40:55D-70(c) and (d), the two types of variance provided for by N.J.S.A. 40:55-39(c) and (d), respectively, namely the hardship variance of (c), which may afford relief from bulk but not from use restrictions, and the special reason variance of (d), which alone may afford relief from use restrictions. The familiar scheme of N.J.S.A. 40:55-39 was to permit the board of adjustment to act dispositively on the (c) variance, whether by grant or denial, but to accord it only dispositive denial power in respect of the (d) variance, its affirmative action thereon being limited to a recommendation to the governing body, which then had the exclusive authority to grant the relief. The alteration in this scheme effected by the 1975 statute is substantial. First, the board of adjustment has been accorded the power to grant a use variance as well as a bulkhardship variance. Second, its power to grant a (c) variance is limited to those applications in respect of which neither subdivision nor site plan approval is required for ultimate development. Where such approval is required, the planning board has been accorded the exclusive power to grant the (c) variance, but in accordance with the same *408 standards generally governing such grants by the board of adjustment. N.J.S.A. 40:55D-60. Finally, the governing body is accorded the statutory power, but only if invoked by an interested party, of appellate review of the grant by the board of adjustment of a (d) variance, and is accorded such review jurisdiction over the grant of a (c) variance by the board of adjustment or the planning board, but only if the local ordinance so provides. N.J.S.A. 40:55D-17(a). Thus, whereas under the prior allocation of powers the governing body had no potential opportunity to review a (c) variance but did have direct control over the grant of a (d) variance, under the present statutory arrangement it has the potential opportunity to review board action in respect of both categories of variance but it no longer has a mandated role in the grant of a (d) variance. The problem of an alleged extra-jurisdictional variance grant with which plaintiff was here confronted has therefore not only been unaddressed by the 1975 act but may well be one of greater urgency and frequency thereunder by virtue of the board's present power to grant use variances, a power which is dispositive of the issue if no appeal is taken to the governing body.
With respect to the merits of the standing issue before us we are in full accord with the trial judge's observation that the board of adjustment is an independent administrative agency whose powers stem directly from the Legislature and hence are not subject to abridgement, circumscription, extension or other modification by the governing body. See, e.g., Duffcon Concrete Products, Inc. v. Cresskill, 1 N.J. 509, 515-516 (1949); Tzeses v. South Orange Bd. of Trustees, 22 N.J. Super. 45, 54 (App. Div. 1952), certif. den. 11 N.J. 327 (1952); Piscitelli v. Scotch Plains Tp. Comm., 103 N.J. Super. 589, 596 (Law Div. 1968); Rogoff v. Tufariello, 106 N.J. Super. 303, 308 (App. Div. 1969), certif. den. 54 N.J. 583 (1969). We also agree that a necessary corollary of that principle is that ordinarily the manner in which the board exercises its exclusive statutory *409 power is not subject to monitoring by the governing body and is therefore immune not only to direct interference by the governing body but also to the indirect interference of an action in lieu of prerogative writs brought by the governing body seeking judicial review of the board's determinations. Our point of disagreement turns on the fact that what the township is here complaining of is not the manner in which the board exercised its statutory power. Its claim, rather, is that the board exceeded its statutory powers and in so doing usurped the function exclusively reserved to the governing body by the enabling legislation. Thus, this is not the ordinary variance case in which the board of adjustment's action may be vulnerable for such alleged misuses of discretion or power as, for example, an action taken unwisely or imprudently, or without an adequate factual basis in the evidence before it, or without an adequate statement of reasons or contrary to the governing body's collective perception of what the public good may permit or what the integrity of the zoning ordinance may require. In our judgment, review at the instance of the governing body of such alleged errors in the exercise of statutory authority and such disputes as to the exercise of discretion would seriously and perhaps irremediably undermine the board's essential autonomy. We are therefore satisfied that so long as the board acts within the ambit of its authority, whether it has acted wisely or not, and whether it has acted correctly or not, are not matters which the governing body itself should be able to raise.
An arrogation of authority is, however, quite a different matter and, in our view, is necessarily and obviously actionable by the body whose authority has been directly infringed upon. Both the holding of Bergen Cty. v. Port of New York Auth., 32 N.J. 303 (1960), and its ratio decidendi compel that conclusion. There the Supreme Court held that the parens patriae interest alone of a political subdivision is not sufficient to justify its judicial challenge to an exercise of power by another public body on the *410 ground that such other body has thereby exceeded its jurisdiction. As the court said:
To permit contests among [governmental bodies] solely to vindicate the right of the public with respect to jurisdictional powers of other public bodies is to invite confusion in government and a diversion of public funds from the purposes for which they were entrusted. The fear is not idle or theoretical. Practical politics being what they are, one can readily foresee lively wrangling among governmental units if each may mount against the other assaults now permissible upon the initiative of the Governor, the Attorney General or a taxpayer or citizen to vindicate the public right. [at 314-315]
The point, however, is that plaintiff there, the County of Bergen, had contended that the Port of New York Authority was acting beyond its statutory authority but it did not suggest that such action in any material way affected its own power to act. And the court was meticulous in pointing out that plaintiff therefore had failed to place in issue any claim of "intrusion upon its assigned political role," the ineluctable implication being that such intrusion would clearly have constituted an actionable claim. Here an asserted intrusion is the very essence of the township's complaint. The injury complained of, moreover, is not merely the individual or collective one of its taxpayers or citizens but also an injury to it in its corporate capacity. See, e.g., Rhyne, Municipal Law, 790 (1957); 17 McQuillin, Municipal Corporations, § 49.03 at 140 (1967). We can perceive no rational basis for denying the township the right to seek judicial redress of that alleged injury and the right to seek judicial protection of its exclusive sphere of governmental action from unwarranted invasion by another public body.[2]
*411 The conclusion we have here reached as to standing raises the more difficult problem of identifying the criteria for determining when a board of adjustment's proposed variance relief constitutes, as a matter of both fact and law, an impermissible foray into the zoning power. The problem is difficult not merely because of the imprecision of the line between what must be done by an exercise of the zoning power and what may be done by variance relief, but more seriously because of the overlap between these techniques in that not insubstantial gray area where either technique would be permissible and appropriate. See, e.g., DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 443 (1970).[3]
By way of broad guideline  and broad guidelines are all that are here possible  the dispositive considerations must be those which underlie the statutory allocation of function between the governing body and the board of adjustment in the first instance. It is the governing body's ultimate responsibility to establish, by the adoption of its zoning ordinances and amendments thereto, the essential land use character of the municipality. This it does *412 by the geographical delineation of its districts and, uniformly within each district, the delineation of the uses permitted therein and the limitation schedules applicable thereto in terms of lot size, lot coverage, height restrictions and the like. N.J.S.A. 40:55-30, 31 and 35 (now N.J.S.A. 40:55D-62). The variance power of the board of adjustment is, on the other hand, intended to accommodate individual situations which, for a statutorily stated reason, require relief from the restrictions and regulations otherwise uniformly applicable to the district as a whole. Roman Catholic Diocese of Newark v. Ho-Ho-Kus, 47 N.J. 211, 216-217 (1966). The individuality of the variance approach is underscored by the limitation of the board of adjustment's power to a "specific piece of property," a limitation expressed both by N.J.S.A. 40:55-39 and N.J.S.A. 40:55D-70. Confining the board's authority to a specific piece of property clearly implies the concept that such a geographical limitation will serve to avoid the potential which the board's action might otherwise have for substantially affecting the essential land use scheme of the entire district itself and perhaps of the entire municipality as well. So we understand the emphasis laid by A M G Associates v. Springfield Tp., 65 N.J. 101, 109-110, fn. 3 (1974), on the size of the parcel involved in determining the susceptibility of the non-conforming development plan to variance relief, the Supreme Court there noting that when "a large tract or a substantial area comprising several tracts" is involved, "the situation is beyond the intended scope of the variance procedure." Id. at 110. How large a tract is too large cannot, of course, be definitively stated.[4] The basic inquiry in each case must be whether the impact of the requested variance will be to substantially alter the character of the district *413 as that character has been prescribed by the zoning ordinance. That inquiry requires analysis and evaluation of such factors as the size of the tract itself; the size of the tract in relationship to the size and character both of the district in which it is located and the municipality as a whole; the number of parcels into which it is anticipated that the tract will be subdivided if subdivision is part of the plan, and the nature, degree and extent of the variation from district regulations which is sought. The test of whether the board has been engaging in proscribed legislation must ultimately be one of both geographic and functional substantiality vis-a-vis the plan and scheme of the municipality's zoning ordinance.[5]
Applying these principles to the matter before us, we are satisfied that the township's complaint raised so clear a prima facie case of an extra-jurisdictional act by the board as to have required its survival of the summary judgment motion. The tract here is sizeable. There is, moreover, a strong suggestion of legislation in the board's wholesale application of the limiting schedule of one district to a proposed development in another district. Because, however, of the paucity of the record, we cannot determine whether on balance, and considering all of the factors we have herein enumerated, the board's action in fact constituted an act of legislation. For the same reasons we are satisfied that the court below was correct in denying the cross-motion for summary judgment made by the township. Accordingly, *414 we remand the matter to the trial court for trial upon such proofs as the parties may see fit to adduce on the question of whether the board's action here constituted a jurisdictional excess. We further point out that the jurisdictional question here is not only a threshold issue but also a dispositive one. That is to say, if the board is determined to have transcended its variance authority, its action must be reversed for that reason alone. If it did not, then the township is foreclosed from attacking the variance grant on its merits since such an attack would in our view constitute an impermissible encroachment by the township upon the autonomy of the board of adjustment.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Whether the cluster development authorization is pursuant to a statutorily conforming planned unit development ordinance is not determinable on this record. See N.J.S.A. 40:55-54 et seq., replaced by N.J.S.A. 40:55D-43, 45, 65(c).
[2] We are aware, as pointed out by the trial judge, that in other jurisdictions standing has been conferred by statute upon various municipal agencies and officers who appeal to the courts from decisions of boards of adjustment. We do not, however, regard the absence of statutory standing in this jurisdiction as indicating a legislative determination to withhold from a governing body the right to sue to protect the integrity of its own legislatively conferred powers. This jurisdiction, moreover, has historically taken a liberal approach to the standing question in land use planning as well as in other actions particularly where matters of public policy are at stake. See, e.g., Urban League of Essex Cty. v. Mahwah Tp., 147 N.J. Super. 28 (App. Div. 1977), certif. den. 74 N.J. 278 (1977); Urban League, New Brunswick v. Carteret Mayor & Council, 142 N.J. Super. 11 (Ch. Div. 1976); certif. den. 74 N.J. 262 (1977); Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98 (1971). And see Berkeley Hgts. Tp. v. Berkeley Hgts. Tp. Bd. of Adj., 144 N.J. Super. 291 (Law Div. 1976). And compare Essex Cty. Welfare Bd. v. Dept. of Inst. & Agencies, 75 N.J. 232 (1978).
[3] There the court held that a ten-acre tract in a single-family zone could have been made available for governmentally financed multi-family use either by the legislative act of rezoning or the quasi-judicial act of the variance relief.
[4] See, e.g., Kunzler v. Hoffman, 48 N.J. 277 (1966), sustaining the grant of a use variance in respect of a 40-acre tract in a residential zone permitting its use for a hospital for the emotionally disturbed.
[5] It may be suggested that the test of "spot zoning" is in some respects the converse of an act of proscribed legislation by the board of adjustment. See, generally, as to the definition of spot zoning, S&L Associates, Inc. v. Washington Tp., 61 N.J. Super. 312, 328 (App. Div. 1960), mod. 35 N.J. 224 (1961); Taxpayers Ass'n, of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 261-262 (1976). That is to say, if a zoning ordinance amendment applicable only to a given parcel of land would fall as spot zoning because of the parcel's size, location and character, it might be that the parcel would then qualify for variance relief if the statutory criteria for such relief were met.