711 A.2d 282

TOWNSHIP OF STAFFORD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. STAFFORD TOWNSHIP ZONING BOARD OF ADJUSTMENT, DEFENDANT–RESPONDENT, AND HUGH SCHULTZ, DEFENDANT–APPELLANT.

Argued January 21, 1998—Decided May 18, 1998.

*Nicholas C. Montenegro* argued the cause for appellant (*Wilbert & Montenegro*, attorneys; *Glenn R. Stern*, on the briefs).

*Charles W. Hutchinson* argued the cause for respondent Township of Stafford (*Gilmore & Monahan*, attorneys).

*Michael H. Mathis* submitted a statement in lieu of brief on behalf of respondent Stafford Township Zoning Board of Adjustment.

The opinion of the Court was delivered by

GARIBALDI, J.

In *Paruszewski v. Township of Elsinboro,* 154 *N.J.* 45, 51, 711 *A.*2d 273, 276 (1998), also decided today, we held that in certain limited circumstances a municipal governing body has standing to appear before the zoning board of adjustment to oppose a nonconforming use certification petition. In this appeal, we consider whether a municipal governing body has standing to challenge the certification of a nonconforming use by the zoning board. To resolve that question, we first must determine whether an applicant seeking certification of a preexisting nonconforming use, pursuant to *N.J.S.A.* 40:55D–68 ("Section 68"), must comply with the notice requirements, pursuant to *N.J.S.A.* 40:55D–12 ("Section 12"), of the Municipal Land Use Law ("MLUL"), *N.J.S.A.* 40:55D–1 to –136.

I

Petitioner Hugh Schultz ("petitioner") owns property at Lot 12, Block 229 in Stafford Township. On that property, petitioner operates his business, Manahawkin Auto Sales. Petitioner also used adjoining Lot 13 to display and store cars. On January 26, 1995, Jeffrey Pharo ("Pharo"), a Deputy Code Enforcement Officer, served petitioner with a violation notice, informing him that his "car business was being operated on [Lot 13] in violation of the Stafford Code." Pursuant to the Stafford Zoning Code, Lot 13 was located in a residential/local business zone that did not allow the display and storage of cars as a permitted use.

In response to that violation notice, petitioner filed an application with the Stafford Township Zoning Board of Adjustment ("Zoning Board" or "Board") on May 1, 1995, requesting certification that the "sale, purchase and repair of automobiles" on Lot 13

was a pre-existing, nonconforming use. The Zoning Board held a public hearing in July 1995 to consider petitioner's application. Petitioner, however, provided no notice of that hearing to owners of property within 200 feet of Lot 13 and did not publish a notice in the appropriate newspaper. *See N.J.S.A.* 40:55D–12(a). At the hearing, petitioner and five additional witnesses supported his application, stating that petitioner had used Lot 13 to store and display cars since 1963. Pharo was the only witness to testify in opposition to the application, stating that he drove by Lot 13 on a daily basis for three years and he "never" saw a car on Lot 13 until the day he cited petitioner for a violation. No testimony was heard from petitioner's neighboring landowners; the Township of Stafford ("Township") attributes that fact to lack of notice. Based on the testimony presented, the Zoning Board approved petitioner's application, finding that petitioner's storage and display of cars on Lot 13 was a pre-existing, nonconforming use. The Board, however, imposed as a restriction that "the use found to be exempt ... does not include the service or repair of any motor vehicle."

In August 1995, the Township filed a complaint in lieu of prerogative writs in Superior Court, Ocean County. The Zoning Board subsequently joined in the Township's brief, concurring that its own decision should be overturned on appeal. Relying on *Township of Dover v. Board of Adjustment,* 158 *N.J.Super.* 401, 386 *A.*2d 421 (App.Div.1978), the Law Division found that the Township had no standing because "the matter before the Board was so narrow in scope" that there was no actionable risk to the character of the district. Because the court found the issue of the Township's standing dispositive, it did not rule on whether petitioner was required to provide Section 12 notice in his application for a nonconforming use certification.

The Appellate Division reversed and vacated the Zoning Board's certification, "without prejudice to the applicant's right to reapply to the zoning board on proper notice to the neighboring landowners." *Township of Stafford v. Stafford Township Zoning Bd. of*

*Adjustment,* 299 *N.J.Super.* 188, 190, 690 *A.*2d 1043 (App.Div. 1997). The panel found that the Board had no jurisdiction to hear petitioner's nonconforming use certification application in the absence of notice to neighboring landowners "within 200 feet" of Lot 13. *N.J.S.A.* 40:55D–12. In addition, the court held that if the Zoning Board lacked jurisdiction, the Township had standing to challenge the Board's certification based on the "arrogation of authority" requirement enunciated in *Dover, supra.* The court equated injury to the Township's citizens with interference with the Township's statutory authority. 299 *N.J.Super.* at 198, 690 *A.*2d 1043. We granted certification, 151 *N.J.* 71, 697 *A.*2d 544 (1997), and now affirm.

## II

When the governing body enacts or amends a zoning ordinance, "there will [inevitably] be uses which are newly prohibited . . .—these are known as nonconforming uses." William M. Cox, *New Jersey Zoning and Land Use Administration,* § 11–1.1 (1997) [hereinafter *New Jersey Zoning* ]. Because it is considered "inequitable to strip away a person's lawfully asserted property rights retroactively," *ibid.,* the MLUL attempts "to balance the municipality's interest in being able to amend its zoning ordinances with the property owner's interest in maintaining the use and value of his or her property." *Palatine I v. Planning Bd.,* 133 *N.J.* 546, 565, 628 *A.*2d 321 (1993). Therefore, although Section 68 permits pre-existing, nonconforming uses "to co-exist with the ordinance that, on its face, prohibits them," *New Jersey Zoning, supra,* § 11–1.1, there is a corresponding tendency by courts to strictly limit the scope of the use and to "reduce[ ][it] to conformity as quickly as is compatible with justice." *Town of Belleville v. Parrillo's, Inc.,* 83 *N.J.* 309, 315, 416 *A.*2d 388 (1980). Section 68 outlines the applicable procedure and provides in pertinent part:

The prospective purchaser, prospective mortgagee, or any other person interested in any land upon which a nonconforming use . . . exists may apply in writing for the issuance of a certificate certifying that the use . . . existed before the adoption of

the ordinance which rendered the use ... nonconforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure nonconforming or at any time to the board of adjustment.... Denial by the administrative officer shall be appealable to the board of adjustment.

[*N.J.S.A.* 40:55D–68.]

Before asking a court for relief, any person whose application to certify a nonconforming use is denied by the administrative officer or who applies more than one year after the adoption of the pertinent ordinance must first file an appeal or application with the zoning board. *R.* 4:69–5 (requiring exhaustion of administrative remedies before action in lieu of prerogative writs may be maintained); *see also Bell v. Township of Bass River,* 196 *N.J.Super.* 304, 314, 482 *A.*2d 208 (Law Div.1984) (explaining that exhaustion of remedies requirement is appropriate because zoning board "is particularly well equipped to address non-conforming use disputes"); *Borough of Bay Head v. MacFarlan,* 209 *N.J.Super.* 134, 137 n. 1, 506 *A.*2d 1299 (App.Div.1986) (noting court is not "the most appropriate forum for determining zoning questions, such as the existence of prior nonconforming uses").

The zoning board's power to certify nonconforming uses is exclusive and may not be exercised by any other municipal agency, *N.J.S.A.* 40:55D–68; *N.J.S.A.* 40:55D–20. The governing body, therefore, is without power to certify nonconforming uses. *See Cronin v. Township Comm.,* 239 *N.J.Super.* 611, 618, 571 *A.*2d 1354 (App.Div.1990). A zoning board's decision with respect to certification of a pre-existing nonconforming use pursuant to Section 68 is not appealable to the governing body. Any appeal of the board's decision must be brought by an action in lieu of prerogative writs that " 'bring[s] before the superior court for inspection the record of the proceedings of the inferior tribunal, to determine whether the latter had jurisdiction and had proceeded according to law.' " *Wyzykowski v. Rizas,* 132 *N.J.* 509, 522, 626 *A.*2d 406 (1993) (quoting *State v. Court of Common Pleas,* 1 *N.J.* 14, 19, 61 *A.*2d 503 (1948)).

### III

Our initial inquiry is whether an applicant submitting a Section 68 application for a nonconforming use certification must provide notice pursuant to Section 12 of the MLUL. That is an issue of first impression.

With respect to most zoning and land use applications, the MLUL "requires public hearings[ ][and] an opportunity for the public to be heard." *Township of Berkeley Heights v. Board of Adjustment,* 144 *N.J.Super.* 291, 300, 365 *A.*2d 237 (Law Div.1976)(citing *N.J.S.A.* 40:55D–10(d)). The MLUL ensures that the public has a chance to be heard, either in support of or in opposition to such applications, by imposing notice requirements. *N.J.S.A.* 40:55D–12. Section 12 requires "[p]ublic notice of a hearing" to be given "on an application for development." *N.J.S.A.* 40:55D–12(a). Specifically, "[p]ublic notice shall be given by publication in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality." *Ibid.* In addition, notice "shall be given to the owners of all real property . . . within 200 feet in all directions of the property which is the subject of such hearing." *N.J.S.A.* 40:55D–12(b).

### A.

The first question presented is whether an application for a nonconforming use certification is an "application for development" in the context of *N.J.S.A.* 40:55D–12(a). An "application for development" is defined in *N.J.S.A.* 40:55D–3 ("Section 3") as "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, conditional use, *zoning variance* or direction for the issuance of a permit . . . ." (emphasis added). *N.J.S.A.* 40:55D–7 ("Section 7"), in turn, defines "variance" as "permission to depart from the literal requirements of a zoning ordinance pursuant to section [40:55D–60] and subsection [40:55D–40(b) ] and [40:55D–70(c)–(d) ]" of the MLUL. Based on the plain language of the

above three statutory provisions, the MLUL does not require Section 68 applicants to give notice to their adjoining landowners.

Section 12, however, requires that *applicants for expansion of a nonconforming use,* pursuant to *N.J.S.A.* 40:55D–70(d) ("Section 70(d)"), provide notice to adjoining landowners. In its reversal, the Appellate Division concluded that petitioner was required to provide notice pursuant to Section 12 because his application was, in fact, a hybrid application under both Section 68 and Section 70(d). 299 *N.J.Super.* at 194, 690 *A.*2d 1043. The court found that petitioner actually applied to expand his nonconforming use because his application sought certification not only for the storage and display of cars, which petitioner testified he had done since 1963, but also for the repair of cars, which petitioner admitted he did not previously perform on Lot 13. Therefore, the "use of the lot for repairing vehicles" would constitute an expansion of petitioner's pre-existing, nonconforming use and, consequently, required a Section 70(d) application and notice to all neighboring landowners. *Ibid.* In *dicta,* the court further observed that the facts of this case suggest " 'a situation which apparently escaped the attention of the draftsman.' " *Id.* at 195, 690 *A.*2d 1043 (quoting *Dvorkin v. Dover Township,* 29 *N.J.* 303, 313, 148 *A.*2d 793 (1959)). The court further reasoned that, logically, Section 12 notice requirements should be applied to Section 68 applications. *Id.* at 196, 690 *A.*2d 1043.

" 'Generally, a court's duty in construing a statute is to determine the intent of the Legislature.' " *Stafford, supra,* 299 *N.J.Super.* at 195, 690 *A.*2d 1043 (quoting *AMN, Inc. v. South Brunswick Township Rent Leveling Bd.,* 93 *N.J.* 518, 525, 461 *A.*2d 1138 (1983)). To determine the legislative intent, courts turn first to the language of the statute. *Strasenburgh v. Straubmuller,* 146 *N.J.* 527, 539, 683 *A.*2d 818 (1996). "If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." *New Jersey Dep't of Law & Pub. Safety v. Bigham,* 119

*N.J.* 646, 651, 575 *A.*2d 868 (1990). However, this Court has noted that

> where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute "consonant with the probable intent of the draftsman 'had he anticipated the situation at hand.'"
>
> [*AMN, Inc., supra,* 93 *N.J.* at 525, 461 *A.*2d 1138 (citations omitted)].

*See also Stafford, supra,* 299 *N.J.Super.* at 195, 690 *A.*2d 1043 (same).

The facts presented in this case illustrate the possibility that what may initially appear to be a Section 68 application may turn out to be a Section 70(d) application during the hearing process, a situation apparently not foreseen by the Legislature. As the Appellate Division correctly noted:

> The problem with excepting Section 68 applications from the notice provisions of Section 12, as demonstrated by what occurred in this case, is that prior to the hearing neither the zoning board nor the public is in a position to know whether the applicant's request will in fact be limited to approval of an existing use, or will instead result in an expansion of an existing use. And this is true without regard to the manner in which the application is styled: whether it is an expansion or not will turn on the facts developed at the hearing. Since a zoning board can only hear an application for expansion of a nonconforming use under *N.J.S.A.* 40:55D–70d on notice to the neighboring landowners, a Section 68 application logically should be accorded the same treatment. That follows because the applicant may be claiming as pre-existing what is in reality an expansion of a use.
>
> [299 *N.J.Super.* at 194–95, 690 *A.*2d 1043.]

Another prominent commentator on zoning and land use advocates a similar conclusion. *See New Jersey Zoning, supra,* § 5–2.5 ("[T]he decision by a board of adjustment on an application ... to interpret the meaning of certain provisions of the zoning ordinance have such widespread ramifications ... that lack of notice in such cases would be inequitable and highly undesirable from a public policy viewpoint.").

■ We do not believe that the Legislature considered whether Section 12 notice requirements should apply to a Section 68 nonconforming use certification application. We observe that although Section 68 applications for certification of a nonconforming use may be submitted to the zoning board at any time, such

applications submitted within one year of the adoption of the ordinance that rendered the use nonconforming also may be submitted to the administrative officer. Unlike the zoning board, which is a quasi-judicial board, the granting of a nonconforming use certification by the administrative officer is a ministerial proceeding. Accordingly, if the Legislature had considered whether the notice provisions of Section 12 were applicable to Section 68 applications, we do not believe that the Legislature would have intended Section 12 notice to be provided for such administrative applications. However, for applications initially submitted to the zoning board, or those originally submitted to an administrative officer and then appealed to the zoning board, we believe that the Legislature would have intended Section 12 notice requirements to apply. In this case, the application was submitted to the zoning board. We, therefore, hold that petitioner was required to comply with the MLUL's Section 12 notice requirements.

### B.

Because we conclude that Section 68 applicants must comply with Section 12 notice requirements, we must now consider whether that holding applies retroactively to petitioner. We find that it does.

"This Court has 'generally followed the traditional rule that the overruling of a judicial decision is retrospective in nature.'" *Rutherford Educ. Ass'n. v. Board of Educ.*, 99 *N.J.* 8, 21, 489 *A.*2d 1148 (1985) (quoting *Darrow v. Hanover Township,* 58 *N.J.* 410, 413, 278 *A.*2d 200 (1971)); *see also Fischer v. Canario,* 143 *N.J.* 235, 243, 670 *A.*2d 516 (1996). "[T]he basis for the doctrine of retrospective application is pragmatic rather than theoretical." *Rutherford, supra,* 99 *N.J.* at 21, 489 *A.*2d 1148. "Thus, there is a presumption in favor of retrospectivity, and 'that presumption can be overcome only by a clear demonstration in a particular case that there are sound policy reasons for according a judicial decision prospective application only.'" *Ibid.* (quoting *Cogliati v.*

*Ecco High Frequency Corp.,* 181 *N.J.Super.* 579, 583, 439 *A.*2d 91 (App.Div.1981), *aff'd,* 92 *N.J.* 402, 456 *A.*2d 524 (1983)).

 The threshold inquiry in determining whether to apply a ruling retrospectively is "whether the rule at issue is a 'new rule of law.'" *State v. Knight,* 145 *N.J.* 233, 249, 678 *A.*2d 642 (1996); *see also Rutherford, supra,* 99 *N.J.* at 21, 489 *A.*2d 1148. The Appellate Division characterized the application of Section 12 notice requirements to Section 68 petitions as "novel." 299 *N.J.Super.* at 193, 690 *A.*2d 1043. Because there is no prior New Jersey case deciding that issue, we conclude that requiring Section 68 applicants to provide Section 12 notice to adjoining landowners is a new rule of law.

 Therefore, we now must determine whether that new rule should be applied prospectively or retroactively. In deciding that issue, "a court's decision is guided by 'what is just and consonant with the public policy considerations in the situation presented.'" *Fischer, supra,* 143 *N.J.* at 244, 670 *A.*2d 516 (quoting *Rutherford, supra,* 99 *N.J.* at 22, 489 *A.*2d 1148). In making that determination, we consider the following factors: "'(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice.'" *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642 (quoting *State v. Nash,* 64 *N.J.* 464, 471, 317 *A.*2d 689 (1974)). The inquiry is very fact sensitive.

"Depending upon the facts of a case, one of the factors may be pivotal." *Rutherford, supra,* 99 *N.J.* at 23, 489 *A.*2d 1148. In this case, factors one and two are the significant factors. With respect to the first factor, the purpose of the new rule—to maximize notice to adjoining landowners of hearings where nonconforming use status will be determined—is furthered by retroactive application. The purpose of notice is "to ensure that members of the general public who may be affected by the *nature and character of the proposed development* are fairly apprised thereof so that they may

make an informed determination as to whether they should participate in the hearing." *Perlmart of Lacey, Inc. v. Lacey Township Planning Bd.,* 295 *N.J.Super.* 234, 237, 684 *A.*2d 1005 (App.Div. 1996) (emphasis added).

Turning to the second factor, we conclude that application of the Section 12 notice requirements does not result in prejudice to petitioner. By affording the adjoining landowners an opportunity to be heard, petitioner is not deprived of the opportunity to reappear before the Zoning Board. If indeed the use of his property is a valid, pre-existing nonconforming use, petitioner will suffer no prejudice as a result of this Court's decision. Rather, the procedural breach in this case will be corrected and petitioner's right to a further hearing remains preserved. Petitioner's right to reapply distinguishes this case from those that announce a new statute of limitations, where the plaintiff's right to recover would be eliminated if the rule were applied retroactively. *See, e.g., Green v. Selective Ins. Co. of Am.,* 144 *N.J.* 344, 354–55, 676 *A.*2d 1074 (1996) (applying statute of limitations holding prospectively in the interest of "fairness and justice"); *Montells v. Haynes,* 133 *N.J.* 282, 298, 627 *A.*2d 654 (1993) (applying statute of limitations holding prospectively where law prior to decision was "sufficiently murky to justify" reliance on longer limitations period).

Because the purpose of the "new rule" announced by the Court is furthered by retroactive application and because petitioner has not demonstrated reliance on his alternative reading of the MLUL notice requirements sufficient to justify prospective application of the rule, petitioner is subject to the Section 12 notice requirements.

## IV

### A.

Based on that determination, we now consider whether the Township had standing to challenge the zoning board's certifica-

tion of petitioner's nonconforming use petition. In *Paruszewski, supra,* 154 *N.J.* at 51–52, 711 *A.*2d at 276–277, also decided today, the Court provided a thorough discussion of the powers of a governing body and zoning board and their breadth as mandated by the New Jersey Constitution, statutes, and judicial decisions. The Appellate Division, reasoning that the Board usurped the Township's power by rendering a decision without proper notice to neighboring landowners, held that the Township had standing to challenge the Zoning Board's certification of petitioner's use of Lot 13. 299 *N.J.Super.* at 195–96, 690 *A.*2d 1043. In reaching that determination, the Appellate Division, as it did in *Paruszewski v. Elsinboro Tp.,* 297 *N.J.Super.* 531, 688 *A.*2d 662 (1997), relied on *Dover, supra,* 158 *N.J.Super.* 401, 386 *A.*2d 421, and *Zoning Bd. of Adjustment v. Datchko,* 142 *N.J.Super.* 501, 362 *A.*2d 55 (App.Div.1976).

In *Datchko, supra,* the Appellate Division recognized the governing body's power to file an action in lieu of prerogative writs against a municipal body "alleged to be in violation of [its] authority." 142 *N.J.Super.* at 508 n. 2, 362 *A.*2d 55. Subsequently, the *Dover* opinion limited the situations where the governing body would have standing without expressly overruling *Datchko.* In *Dover, supra,* a developer applied to the zoning board for a variance to develop an eighty-one acre tract of land in a rural zone to allow the construction of 162 homes rather than the maximum of ninety-four homes otherwise prescribed. 158 *N.J.Super.* at 406, 386 *A.*2d 421. Following public hearings, the zoning board granted the variance. The township filed an action in lieu of prerogative writs against the developer and its zoning board, seeking to set aside the variance proposal. The Law Division dismissed the township's complaint for lack of standing. On appeal, the Appellate Division reversed. *Id.* at 414, 386 *A.*2d 421.

In its decision, the *Dover* panel reasoned:

> We are ... satisfied that so long as the board acts within the ambit of its authority, whether it has acted wisely or not, and whether it has acted correctly or not, are not matters which the governing body itself should be able to raise.

> An arrogation of authority is, however, quite a different matter and, in our view, is necessarily and obviously actionable by the body whose authority has been directly infringed upon.
>
> [158 *N.J.Super.* at 409, 386 *A.*2d 421 (emphasis added).]

Reading that language liberally, the Appellate Division in the instant case concluded that

> we are also involved with an arrogation of authority by the zoning board, although we do not believe it was done knowingly. While here the arrogation did not directly infringe upon the governing body's authority, the specific nature of the arrogation, holding a hearing without the required notice to the neighboring landowners, substantially interfered with the ability of citizens to institute actions on their own.
>
> [299 *N.J.Super.* at 198, 690 *A.*2d 1043 (citation omitted).]

*See also Washington Township Zoning Bd. of Adjustment v. Washington Township Planning Bd.,* 217 *N.J.Super.* 215, 223, 525 *A.*2d 331 (App.Div.) (recognizing " 'wholesale' invasion of a governing body's paramount legislative powers over the zoning scheme of a municipality" supports governing body's standing to challenge such an invasion), *certif. denied,* 108 *N.J.* 218, 528 *A.*2d 36 (1987).

This Court has recognized that a municipal agency's *parens patriae* interest in protecting the general public is insufficient to support standing to challenge an exercise of power by another municipal agency. *See County of Bergen v. Port of New York Auth.,* 32 *N.J.* 303, 311–15, 160 *A.*2d 811 (1960). To allow such contests among agencies. "solely to vindicate the right of the public" is "to invite confusion in government and a diversion of public funds from the purposes for which they were entrusted." *Id.* at 314, 160 *A.*2d 811. Numerous New Jersey cases have reached a similar conclusion. *See, e.g., Washington Township, supra,* 217 *N.J.Super.* at 224, 525 *A.*2d 331; *Council of Newark v. James,* 232 *N.J.Super.* 449, 451, 557 *A.*2d 683 (App.Div.), *certif. denied,* 117 *N.J.* 166, 564 *A.*2d 883 (1989).

However, the *Datchko* and *Dover* courts recognized that the governing body will have standing to institute an action in lieu of prerogative writs in certain limited circumstances. *See Datchko, supra,* 142 *N.J.Super.* at 508, 362 *A.*2d 55 (holding that "the municipal governing body may institute an action [in lieu of

prerogative writs], to rescind the relief so granted [by the zoning board] and to enjoin what is actually a violation of the zoning ordinance and plan"); *Dover, supra,* 158 *N.J.Super.* at 409, 386 *A.*2d 421; *see also Council of Newark, supra,* 232 *N.J.Super.* at 451–52, 557 *A.*2d 683 (holding that city council had standing to sue mayor "to prevent [him] from encroaching on its statutory duties and responsibilities.")

Although the *Dover* court addressed the issue of standing in the context of the variance procedure, its holding remains helpful in the context of nonconforming use certifications. Subsequent variance cases have applied *Dover*'s "arrogation of authority" requirement. *See, e.g., Vidal v. Lisanti Foods, Inc.,* 292 *N.J.Super.* 555, 564, 679 *A.*2d 206 (App.Div.1996) (holding zoning board's grant of use variances based on view that present zoning is inappropriate "constituted an impermissible *de facto* rezoning of the tract" and usurped governing body's power to make zoning decisions by ordinance); *41 Maple Assocs. v. Common Council,* 276 *N.J.Super.* 613, 616, 648 *A.*2d 732 (App.Div.1994) (quoting *Dover* in support of proposition that governing body may challenge municipal board's grant of variance " 'only where that variance substantially affects the zoning plan of the municipality' "); *Feiler v. Fort Lee Bd. of Adjustment,* 240 *N.J.Super.* 250, 256–57, 573 *A.*2d 175 (App.Div. 1990) (finding use of variance power to convert entire low density two-family zone into high density residential tower district to constitute *de facto* rezoning of entire district), *certif. denied,* 127 *N.J.* 325, 604 *A.*2d 600 (1991).

### B.

Applying *Dover* in this case raises two questions: (1) whether the Zoning Board exceeded its authority in hearing petitioner's application and certifying his use without petitioner having complied with Section 12 notice requirements, and (2) if the Zoning Board did act beyond its authority, whether the Township had standing to challenge the Zoning Board's action. Because petitioner was required to comply with the MLUL's Section 12

notice requirements, the Board exceeded its authority in certifying petitioner's use of Lot 13 as a pre-existing, nonconforming use. "[T]he giving of statutory notice of hearing is a jurisdictional requirement, and unless notice is given as required by statute the board lacks power to hear or consider an application even if the subject matter is within its statutory power." *New Jersey Zoning, supra,* § 4–2.1; *see also Perlmart, supra,* 295 *N.J.Super.* at 236, 684 *A.*2d 1005 (finding that "proper notice is a jurisdictional prerequisite, and a failure to so provide is fatal to the Planning Board's approval"). Petitioner was required to provide Section 12 notice to all landowners within 200 feet of Lot 13. *N.J.S.A.* 40:55D–12. His failure to do so removes the Zoning Board's jurisdiction to hear his application, even though the subject matter, *i.e.,* nonconforming use certification, was within its statutory power. Therefore, the Board's action in hearing petitioner's application falls outside the ambit of its authority.

 Our finding that the Board's action in this case resulted in an arrogation of its authority raises the issue whether the Township had standing to challenge the Board's certification by way of an action in lieu of prerogative writs. We find that it did. When a zoning board exceeds its authority in certifying a nonconforming use and such action threatens the public's interest or enforcement of the MLUL, then a governing body may institute an action in lieu of prerogative writs challenging the board's nonconforming use certification. For example, if the Township simply were asserting that the Zoning Board had acted improperly in determining whether petitioner's sale, purchase and repair of automobiles constituted a valid, nonconforming use, the Township would lack standing to institute a court proceeding challenging that determination. However, because the Zoning Board did not have authority to act and deprived the adjoining landowners of notice and the opportunity to be heard and the Board of an opportunity to hear all the facts, the Township did have standing to challenge the Board's action.

### C.

Finally, the Township is not precluded from challenging the certification because of its failure to challenge the Zoning Board's jurisdiction at the hearing on petitioner's application. That finding is particularly appropriate in this case given that this Court had not previously decided whether a township could appear before its zoning board in opposition to or in support of a specific application. *See Paruszewski, supra,* 154 *N.J.* at 55, 711 *A.*2d at 278.

### V.

This case, and its companion case, *Paruszewski, supra,* 154 *N.J.* 45, 711 *A.*2d 273, require the Court to consider when a governing body will have standing in connection with nonconforming use certification applications. In *Paruszewski,* the issue was whether a governing body may send the township attorney to oppose a nonconforming use certification application before the zoning board. In this case we decide whether a governing body may judicially challenge action taken by the zoning board on a nonconforming use certification application.

The power to issue nonconforming use certifications is granted solely to the municipality's appropriate administrative officer and to the zoning board. *N.J.S.A.* 40:55D–68; *N.J.S.A.* 40:55D–20. The governing body has no power to hear Section 68 nonconforming use applications or to review a zoning board's decision on such an application. *Paruszewski, supra,* 154 *N.J.* at 54, 711 *A.*2d at 278. Moreover, the MLUL prohibits the governing body from infringing on those powers expressly reserved to the planning and zoning boards. *N.J.S.A.* 40:55D–20 ("Any power expressly authorized by this act to be exercised by [the] (1) planning board or (2) board of adjustment shall not be exercised by any other body, except as otherwise provided in this act."). By giving exclusive authority over nonconforming use certifications to the zoning board and providing that the governing body of a municipality has no right to review the board's decision on a Section 68 noncon-

forming use petition, the Legislature evidenced its intent that the governing body generally should not interfere with or influence the zoning board's decision with respect to nonconforming use certifications, unless the zoning board exceeds its statutory authority and such arrogation affects a substantial public interest of the township or zoning plan. *Id.* at 55, 711 *A.*2d at 278.

We recognize that by allowing suits between governmental bodies "the prompt and orderly review of land use applications, envisioned by the [MLUL], would essentially grind to a halt." *Washington Township, supra,* 217 *N.J.Super.* at 224, 525 *A.*2d 331. Therefore, in this case, we limit our decision to those rare circumstances where a zoning board exceeds the scope of its authority, thereby arrogating the governing body's authority, and such action threatens either the public interest or enforcement of the MLUL.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORTIZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLMAN—7.

*Opposed*—None.