**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0843-16T1

MERCK SHARP &
DOHME CORP., a New
Jersey Corporation,

      Plaintiff-Respondent,

v.

TOWNSHIP OF BRANCHBURG,

      Defendant-Appellant.

_____

Argued October 30, 2018 – Decided December 13, 2018

Before Judges Hoffman, Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1172-08.

Mark S. Anderson argued the cause for appellant (Woolson Anderson PC, attorneys; Robyn D. Wright and Marks S. Anderson, on the briefs).

Christopher John Stracco argued the cause for respondent (Day Pitney, LLP, attorneys; Christopher John Stracco and Jennifer Gorga Capone, on the brief).

PER CURIAM

Defendant Township of Branchburg (Branchburg or the Township) appeals from the Law Division decision invalidating a 2008 amendment to its land use ordinance, as applied to plaintiff's property (the Merck property). The trial court's decision proclaimed a new standard for reviewing the legality of ordinances that "involve drastic density reductions in growth areas" and do not adhere to the guidelines set forth in the State Development and Redevelopment Plan (State Plan), by presuming such ordinances invalid and placing the burden to justify their necessity on the municipality. Applying this standard, the court held the Township failed to prove that applying the ordinance to Merck's property "carries out the purposes of the Municipal Land Use Law" (MLUL).[1] We conclude that application of this new standard constituted error; instead, the trial court should have applied the well-settled standard that presumes zoning ordinances valid and places the burden upon the challenger. We therefore vacate and remand for reconsideration under the correct standard.

I.

According to 2007 property tax records, thirty-seven percent of Branchburg's land is assessed as residential, twenty-six percent is farm assessed and farm qualified land, sixteen percent is public and public school property,

_____

[1] N.J.S.A. 40:55D-1 to -112.

and the remainder is mostly commercial, industrial, or vacant land. The total size of Branchburg is roughly 12,000 acres.

The Merck property consists of three adjacent tax lots in Branchburg that, taken together, constitute approximately 206 acres in the central part of Branchburg. Most of the land in the central part, other than the Merck property, is dedicated to residential or commercial uses. The Merck property constitutes the last remaining large, undeveloped parcel in the vicinity. Until 2007, plaintiff used the property to conduct animal research and testing for veterinary pharmaceutical drugs. Today, the only functional buildings on the property are a conference center and a barn. According to the United States Department of Agriculture, the parcel consists of forty-one percent prime farmland, forty-one percent farmland of statewide importance, and six percent farmland of local importance. The entire property is assessed as farmland for tax purposes, and much of it is currently farmed.

The State Plan designates the Merck property as within "planning area 2," which is intended to accommodate much of the State's future growth due to access to infrastructure supporting development. The entire parcel lies within a sewer and water utility service area.

As early as 1982, Branchburg zoned the property in the Research Zone. Branchburg's 1988 Master Plan recommended the Merck property remain in the Research Zone to allow Merck to continue its ongoing research. In its discussion of general objectives, the 1988 Master Plan found that the "preservation of the rural, open-spaced character of the township" is "extremely important and should be the first goal."

In 1993, Branchburg issued a Master Plan Reexamination Report. The report recommended rezoning the Merck property for single family development by placing it in the Low Density Residential Zone (LD Zone). Permitted uses in the LD Zone include single family residences on one-acre lots, commercial agriculture, and research farms on tracts of 100 acres or more. Branchburg implemented the recommendation.

The instant matter arises out of the recommendations made in the 2006 Master Plan Reexamination Report (2006 Report), which the Branchburg Planning Board adopted. The 2006 Report noted that the goal of preserving the town's rural character had become "increasingly difficult," and found the three-acre Agricultural Zone no longer sufficient to maintain the rural ambiance of the town. The report emphasized the increased importance of preserving open space and farmland.

A-0843-16T1

The 2006 Report recommended creation of a Resource Conservation District (RC District) to combine agricultural and other open lands along the riverfront corridor into a "continuous low intensity/conservation zone throughout the Township . . . ." Due to development, the report cited the need to retain "large contiguous masses of farmland and other undeveloped lands" and recommended a six-acre minimum lot size, with a residential clustering component, in the RC District. The report recommended that the RC District include the Merck property. It also recommended revision of the Master Plan's vision statement to emphasize the importance of protecting and preserving open space and farmland, establishing density and intensity standards to relate development with natural and built infrastructure, preventing sprawl, and providing housing opportunities for all ages and income levels, among others things.

In June 2008, Branchburg adopted Ordinance 2008-1093, implementing the recommendations of the 2006 Report, but changed the name of the RC District to the Raritan River Corridor District (RRC District). The ordinance aimed to prevent destruction of the remaining agricultural landscape and rural character of Branchburg and to protect public investments made to preserve farmland and open space.

Under the ordinance, permitted uses in the RRC District include single-family residences, commercial agriculture and home agriculture, public parks, churches, nursery schools, child-care centers, volunteer fire companies and first aid or rescue squads, family day care homes, and community residences. The ordinance requires a six-acre minimum lot size in the RRC District.

The ordinance included the Merck property within the RRC District, thus downzoning Merck's property from one residence per acre (in the LD Zone) to one residence per six acres (in the RRC District). The ordinance maintains the LD Zone for existing residential developments that abut the northwest and southwest borders of the Merck property.

In August 2008, plaintiff filed a complaint in lieu of prerogative writs in the Law Division, challenging the rezoning of its property. Following discovery, the trial court granted partial summary judgment to Branchburg, dismissing counts which alleged constitutional claims and inverse condemnation. The court further held that plaintiff was not required to exhaust administrative remedies, concluding that Branchburg's zoning board lacked jurisdiction to hear plaintiff's request to restore the previous LD zoning to its property, rendering administrative relief futile.

A-0843-16T1

The matter proceeded to trial in March 2016. As the parties did not dispute the essential facts of the matter, the trial consisted solely of expert testimony and the presentation of documentary evidence. Although the experts largely agreed on the facts, the conclusions drawn from those facts diverged. The court issued its ruling in April 2016, entering a judgment in favor of plaintiff, invalidating Ordinance 2008-1093 as applied to plaintiff's property. This appeal followed.[2]

## II.

Branchburg first argues the trial court should have required plaintiff to exhaust administrative remedies by seeking a variance from the local zoning board, prior to proceeding in court. It asserts plaintiff's failure to do so requires dismissal. We disagree.

Except where the interest of justice requires, actions under Rule 4:69 shall not be maintained when there is a right of review before an administrative agency available. R. 4:69-5. The requirement for litigants to exhaust administrative remedies before seeking relief in the courts is well established. See City of Atlantic City v. Laezza, 80 N.J. 255, 265 (1979); Macleod v. City

---

[2] The parties thereafter entered into a consent order staying the requirement that Branchburg rezone the Merck property, pending this appeal.

A-0843-16T1

of Hoboken, 330 N.J. Super. 502, 508 (App. Div. 2000). The requirement allows administrative bodies to perform their functions without interference from the courts, ensures the agency with appropriate expertise hears the claim, and avoids unnecessary litigation. Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-87 (1979) (quoting Brunetti v. Borough of New Milford, 68 N.J. 576, 588 (1975)). Accordingly, "there is nonetheless a strong presumption favoring the requirement of exhaustion of remedies." Brunetti, 68 N.J. at 588.

However, in limited situations a party need not exhaust administrative remedies. These situations include: 1) when only a question of law needs to be resolved; 2) when the administrative remedies would be futile; 3) when irreparable harm would result; 4) when jurisdiction of the agency is doubtful; or 5) when an overriding public interest calls for a prompt judicial decision. Abbott v. Burke, 100 N.J. 269, 298 (1985) (quoting Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 561 (1979)).

Generally, landowners must pursue administrative remedies before challenging zoning ordinances. Griepenburg v. Twp. of Ocean, 220 N.J. 239, 260 (2015). Likewise, a court should typically decline to adjudicate the matter until the owner has exhausted available administrative remedies. Deal Gardens,

Inc. v. Bd. of Trs. of Loch Arbour, 48 N.J. 492, 497-98 (1967) (quoting Conlon v. Bd. of Pub. Works, Paterson, 11 N.J. 363, 370 (1953)). "[R]elief should first be sought by way of variance . . . for in such situations the local administrative agencies can generally adequately deal with the problem." AMG Assocs. v. Twp. of Springfield, 65 N.J. 101, 109 n.3 (1974).

A board of adjustment may "exercise only those powers granted by statute." Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 54 (1998). The MLUL vests zoning boards with the power to grant variances to permit specific pieces of property to diverge from ordinance requirements. See N.J.S.A. 40:55D-70(c) to (d). To obtain a variance, an applicant must demonstrate it "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70.

Here, plaintiff did not file for variance relief before initiating the action in lieu of prerogative writs. However, the trial court held that Branchburg's zoning board lacked jurisdiction to hear plaintiff's request to alter the zoning, rendering administrative relief futile. Thus, the issue presented is whether the zoning board had jurisdiction to grant the relief plaintiff requested.

9

The resolution of this jurisdictional issue lies in the distinction between zoning and a variance. Zoning involves the adoption of ordinances and amendments to establish "the essential land use character of the municipality" by the "geographical delineation of its districts," and the delineation of the uses permitted such as lot size, height restrictions, and the like. Twp. of Dover v. Bd. of Adjustment, 158 N.J. Super. 401, 411-12 (App. Div. 1978) (citing N.J.S.A. 40:55D-62).

Likewise, a variance accommodates individual situations requiring relief from the restrictions and regulations that otherwise uniformly apply. Id. at 412. The limitation on the variance power to a "specific piece of property" prevents the board's action from "substantially affecting the essential land use scheme of the entire district itself and perhaps of the entire municipality as well." Ibid.

A primary factor in determining whether a zoning board has jurisdiction over a request for zoning relief is the size of the parcel sought to be rezoned. Ibid. When the subject property involves a large tract of land, "the situation is beyond the intended scope of the variance procedure . . . ." AMG Assocs., 65 N.J. at 110, n.3. The court should also consider:

> [T]he size of the tract in relationship to the size and character both of the district in which it is located and the municipality as a whole; the number of parcels into which it is anticipated that the tract will be subdivided

A-0843-16T1

> if subdivision is part of the plan, and the nature, degree and extent of the variation from district regulations which is sought.
>
> [Dover, 158 N.J. Super. at 413].

Whether a large parcel or small parcel of land is at issue, a variance may usurp the zoning power if the grant of the variance "substantially alters the municipality's zone plan . . . ." Twp. of N. Brunswick v. Zoning Bd. of Adjustment, 378 N.J. Super. 485, 493 (App. Div. 2005). Here, the Merck property includes roughly 206 acres; however, it comprises less than five percent of the RRC District.

Courts must also evaluate the relation of the parcel at issue to the character of the district to determine whether granting variance relief would usurp the zoning power. Dover, 158 N.J. Super. at 413. The RRC District includes undeveloped areas, floodplain areas, open lands, and lands with fertile farmland, with the aim to "conserve large contiguous masses of farmland and other undeveloped lands," as noted in the 2006 Report. The Merck property constitutes one of the largest, last remaining undeveloped parcels of land in Branchburg, consists almost entirely of fertile farmland, and most of it is currently farmed, which are features consistent with the other lands in the RRC district. The northwest and southwest borders of the property contain

environmentally sensitive features such as steep slopes, a stream, and floodplains. The parcel therefore contains many features similar to the undeveloped rural farmland in the RRC district. This factor thus disfavors the zoning board's jurisdiction to rezone the Merck property.

The last Dover factor concerns the number of parcels into which it is anticipated that the tract will be subdivided, and the nature, degree and extent of the variation. 158 N.J. Super. at 413. Plaintiff's request to rezone its property would reduce the permitted density on the parcel to one residence per acre, a six-fold increase in density. The fact that Merck would have to obtain bulk variances for so many lots across 206 acres of land would result in "de facto rezoning." Victor Recchia Residential Constr., Inc. v. Zoning Bd. of Adjustment of Twp. of Cedar Grove, 338 N.J. Super. 242, 254 (App. Div. 2001).

Finally, the ordinance's amendment history weighs heavily against finding the zoning board had jurisdiction to grant relief. Branchburg enacted the amendment in June 2008, and plaintiff filed suit less than two months later. Since the amendment created the RRC District, and expressly rezoned the Merck property to include it within that district, any zoning board action granting relief to plaintiff would run directly counter to the ordinance.

We affirm the trial court's ruling that the zoning board lacked jurisdiction to grant plaintiff the relief it sought. Plaintiff therefore did not wrongly fail to exhaust administrative remedies.

III.

Branchburg next argues the trial court erred by presuming the ordinance invalid and reversing the usual burden of proof. We agree.

Zoning ordinances are presumed valid. Griepenburg, 220 N.J. at 253 (citing Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 350-51 (2003)). The challenging party "bears the burden of overcoming that presumption" and courts should uphold ordinances that are "debatable." Ibid. "A mere difference of opinion as to how an ordinance will work will not lead to a conclusion of invalidity; 'no discernible reason' is the requisite standard." Zilinsky v. Zoning Bd. of Adjustment, 105 N.J. 363, 369 (1987) (quoting Roselle v. Wright, 21 N.J. 400, 409-10 (1956)). The State constitution requires that the delegation of zoning authority to municipalities must be "liberally construed" in a municipality's favor. Rumson Estates, 177 N.J. at 351; N.J. Const. art. IV, § 7, ¶ 11.

A challenger may overcome the presumption of validity by demonstrating the ordinance is "clearly arbitrary, capricious or unreasonable." Pheasant Bridge

13

Corp. v. Twp. of Warren, 169 N.J. 282, 290 (2001) (quoting Bow & Arrow Manor, Inc. v. W. Orange, 63 N.J. 335, 343 (1973)).  Additionally, a challenger may overcome the presumption of validity by showing the ordinance is "plainly contrary" to principles of zoning or the zoning statute.  Ibid.  An ordinance "must not be inconsistent with state or federal constitutional requirements or other preempting legal authority," and "must conform to MLUL requirements and further MLUL goals."  Griepenburg, 220 N.J. at 253 (citing Rumson Estates, 177 N.J. at 351).

Here, the trial court proclaimed a novel holding:

> [W]here a significant down-zoning occurs in an area marked for growth in regional plans, the burden should shift to the municipality to justify that down-zoning as fairly reconciling regional and local goals and as being rationally related to permissible ends.

The trial court reasoned that the legislative and judicial branches give "enhanced, even if not dispositive, weight to regional planning considerations . . . ."  Because, in its view, Branchburg's ordinance "flouts the thrust of each and every regional plan applicable to this property," it presumed the ordinance invalid and required Branchburg to demonstrate why rezoning was necessary to further its goals.

14

Through the New Jersey State Planning Act, N.J.S.A. 52:18A-196 to -207, the legislature intended to create a "cooperative planning process" involving participation of all levels of government to "enhance prudent and rational development, redevelopment and conservation policies and the formulation of sound and consistent regional plans and planning criteria." N.J.S.A. 52:18A-196(e). However, the Act does not bind municipalities to follow the State Plan, which is "not intended either to validate or invalidate specific ordinances." Bailes v. Twp. of E. Brunswick, 380 N.J. Super. 336, 359 (App. Div. 2005); see also Mount Olive Complex v. Twp. of Mount Olive, 340 N.J. Super. 511, 543 (App. Div. 2001).

Additionally, the trial court relied upon S. Burlington County NAACP v. Mount Laurel, 67 N.J. 151 (1975) ("Mount Laurel I"), where the Court addressed the use of zoning to deny affordable housing opportunities. Mount Laurel I, 67 N.J. at 179. The Court recognized a "broader view of the general welfare" set forth in the State constitution, to include a "presumptive obligation on the part of developing municipalities at least to afford the opportunity by land use regulations for appropriate housing for all." Id. at 180. The Court found that "proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local

land use regulation." Id. at 179. The Court therefore shifted the burden to the municipality due to constitutional concerns regarding the opportunity for low and moderate income housing. Id. at 180-81.

We do not view the present case as presenting a constitutional interest comparable to Mount Laurel I. In the absence of a comparable constitutional consideration, we see no reason to deviate from the well-settled rule that ordinances are presumed valid, and find no basis to shift the burden from the party challenging the validity of the ordinance. Cf. Zilinsky, 105 N.J. at 371. Insofar as the trial court announced and applied a new, incorrect legal standard, we reverse.

At the conclusion of the trial, the court made few factual findings or credibility determinations. Rather, it applied an incorrect legal standard and placed an impermissible burden on Branchburg to justify the ordinance. Because the court's fact-finding was inextricably intertwined with the erroneous legal standard it applied, we cannot sustain its conclusions.

As a result, we have no alternative but to vacate the order under review and remand for reconsideration under the correct legal standard. On remand, plaintiff shall bear the burden of overcoming the applicable presumption of validity by demonstrating the amended ordinance is clearly arbitrary, capricious

16

or unreasonable, or by showing the ordinance is plainly contrary to principles of zoning or the zoning statute.

Affirmed in part, and vacated and remanded, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0843-16T1