928 A.2d 88 (2007)
395 N.J. Super. 46
BUILDERS LEAGUE OF SOUTH JERSEY, INC., a New Jersey non-profit corporation, Plaintiff-Respondent,
v.
The TOWNSHIP OF FRANKLIN, County of Gloucester, a Municipal Corporation of the State of New Jersey and the Mayor and Township Committee of the Township of Franklin, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 2006.
Decided July 18, 2007.
*90 William F. Ziegler, Woodbury, argued the cause for appellants (Holston, MacDonald, Uzdavinis, Eastlack, Ziegler & Lodge, attorneys; Mr. Ziegler and Samuel J. Myles, on the brief).
Robert M. Washburn, Cherry Hill, argued the cause for respondent (Flaster/Greenberg, attorneys; Mr. Washburn, of counsel and on the brief; Matthew S. Burns, on the brief).
Before Judges CUFF, WINKELSTEIN and FUENTES.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Plaintiff Builders League of South Jersey, Inc. (Builders League) challenged a newly adopted ordinance that amended the zoning code and map of defendant Township of Franklin (the Township). Plaintiff alleged, and Judge Bowen agreed, that the amendment created a program for the transfer of development rights and that the program is contrary to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, and specifically, N.J.S.A. 40:55D-137 to -163. The governing body appeals from the summary judgment order that invalidated Ordinance No.2004-13 amending Chapter 253 of the Township Code. The issue before this court is whether the municipality may devise a transfer of development rights program other than as authorized by the State Transfer of Development Rights Act. We hold that it may not and affirm.
We commence our discussion with a review of the statutory framework as it affects the issue presented in this appeal. In 1989, the Legislature adopted the Burlington County Transfer of Development Rights Demonstration Act (the Burlington Act). N.J.S.A. 40:55D-113 to -129. The Legislature found that the State is "faced with the challenge of accommodating vital growth while maintaining the environmental integrity and preserving the natural resources and cultural heritage" of the State. N.J.S.A. 40:55D-114. The Legislature also recognized "that the responsibility for meeting this challenge falls most heavily upon local government to appropriately shape the land use patterns" to accomplish these goals. Ibid. The Legislature also found that local municipalities lacked "effective and equitable means" to transfer development to the most appropriate areas within the municipality. Ibid. While recognizing these limitations, the Legislature was reluctant to establish "development potential transfer programs" throughout the State without an opportunity to study the feasibility of the program. Ibid. To that end, the Legislature selected Burlington County to be the site of a pilot program. Ibid.
According to the Burlington Act, a "development transfer" means "the conveyance of development potential, or the permission for development, from one or more lots to one or more other lots by deed, easement, or other means as authorized by ordinance." N.J.S.A. 40:55D-115. Any municipality within Burlington County could adopt an ordinance that provided "for the transfer of development within its jurisdiction." N.J.S.A. 40:55D-116a. In addition, the governing bodies of two or more municipalities may adopt "substantially similar ordinances" that "provide for *91 a joint program for the transfer of development, including transfers from sending zones in one municipality to receiving zones in the other." Ibid. The ordinances had to be approved by the county planning board. Ibid. See also N.J.S.A. 40:55D-120.
Prior to the adoption of any development transfer ordinance, a Burlington County municipality was required to prepare a report that estimated future population and economic growth, identified all potential sending and receiving zones, estimated the land values of the sending zones, estimated the existing and potential infrastructure of the receiving zones, and presented a procedure and method "to convey the development potential" from one zone to another. N.J.S.A. 40:55D-117a. Prior to implementation, a municipality was required to amend its master plan and land use regulations to provide "explicit planning objectives and design standards for the receiving zone." N.J.S.A. 40:55D-117c.
Based on the section 117a report, the municipality was authorized to prepare an ordinance that designated sending and receiving zones. N.J.S.A. 40:55D-118a. A sending zone was required to have one or more of the following characteristics: "substantially undeveloped or unimproved farmland, woodland, floodplain, wetlands, endangered species habitat, aquifer recharge area;" specific topographical characteristics, such as steep slopes, or particular uses, such as parkland; land improved or developed in a distinct or unique manner; other unimproved or improved land that should remain at low densities due to inadequate infrastructure or other reasons related to local or regional plans. N.J.S.A. 40:55D-118b. Land previously restricted from development through development or conservation easements could be included in a sending zone if inclusion was in the public interest. N.J.S.A. 40:55D-118c. Finally, the receiving zone had to be amenable to development, N.J.S.A. 40:55D-118d, and the municipality was required to determine the development potential of the receiving zone and further determine that development in that zone was "realistically achievable" at the time of adoption. N.J.S.A. 40:55D-118e.
The development transfer ordinance was also required to "provide for the issuance of such instruments as may be necessary and the adoption of procedures for recording the permitted use of the land at the time of the recording, the separation of the development potential from the land, and the recording of the allowable residual use of the land upon separation of the development potential." N.J.S.A. 40:55D-119a. The ordinance must also impose the obligation on the owner of the property from which development potential has been removed to file the necessary documentation regarding current use and future limitation on use of the property in the same manner as the deed was originally recorded. N.J.S.A. 40:55D-119b. See also N.J.S.A. 40:55D-122.
The Burlington Act also authorized the governing body of the county or a municipality in the county to "provide for the purchase, sale, or exchange of the development potential" of property in a sending zone by the device of a "development transfer bank." N.J.S.A. 40:55D-125a. The statute prescribed the principles for governance, funding and the exercise of the municipality's authority. Ibid.
In 2004, after fifteen years of study, the Legislature adopted the State Transfer of Development Rights Act (the State Act). N.J.S.A. 40:55D-137 to -163. The Legislature expressly found that the Burlington Demonstration Project was a success and that it was appropriate to expand the program statewide in a fair and equitable *92 manner. N.J.S.A. 40:55D-138. The State Act is substantially similar to the Burlington Act with some changes based on the Burlington County experience and the statewide application of the program. Prior to adoption or amendment of any development transfer ordinance, a municipality must adopt a development transfer plan element of its master plan, N.J.S.A. 40:55D-140a; adopt a capital improvement program for the receiving zone, N.J.S.A. 40:55D-140b; adopt a utility service plan element of the master plan for the receiving zone, N.J.S.A. 40:55D-140c; prepare a real estate market analysis "which examines the relationship between the development rights anticipated to be generated in the sending zones and the capacity of designated receiving zones to accommodate the necessary development," N.J.S.A. 40:55D-140d; and receive approval from the State Planning Commission. N.J.S.A. 40:55D-140e.
Prior to adoption of a development transfer ordinance, the municipality must submit the proposed ordinance to the county planning board and the county agricultural board, if the ordinance and master plan changes involve agricultural land. N.J.S.A. 40:55D-149. The county planning board must submit formal comments to the municipality within sixty days and recommend or not recommend enactment of the proposed ordinance. N.J.S.A. 40:55D-150a. If the county planning board does not recommend enactment and the municipality and the county planning board cannot resolve their differences, the municipality must petition the Office of Smart Growth, a State agency, to render a final determination. N.J.S.A. 40:55D-150c. If the Office of Smart Growth determines that the proposed ordinance may be approved, the municipality may proceed to adopt the ordinance. N.J.S.A. 40:55D-152. The Office of Smart Growth may determine that the ordinance may be approved with conditions. Ibid. It may also disapprove the proposed ordinance in which case the ordinance may not be adopted. Ibid.
Any development transfer ordinance and the real estate market analysis must be reviewed three and five years after adoption. N.J.S.A. 40:55D-155 and -156. Thereafter, the planning board and governing body must review the development transfer ordinance and the real estate market analysis at least every five years. N.J.S.A. 40:55D-157. The State Act also continues provision for local and regional development banks but also establishes a State Transfer of Development Rights Bank. The State Act was approved on March 29, 2004, and effective on September 25, 2004. L. 2004, c. 2, § 40.
On September 14, 2004,[1] the Township adopted Ordinance 2004-13 as an amendment to Chapter 253 of the Township Code. The stated purpose of the ordinance is "to better regulate the development of land throughout the Township." The ordinance also stated that amendment to the zoning regulations affecting the R-A Residential District "is essential to the preservation of the rural character of Franklin Township as envisioned by the Master Plan."
The R-A Zone is also known as the Residential Agricultural District. As amended, section 253-105 provides that all new subdivision within the R-A District shall be governed by the newly adopted minimum standards. This section also provides that "[a]ll land in the R-A Residential District is either in the Receiving Area or the Sending Area as designated on the Zoning Map." Section 253-105 also creates five types of subdivisions. Section *93 253-105C provides that subdivision types 1 (conventional lot minor subdivisions) and 2 (basic conservation major subdivisions) may occur in either the sending or receiving areas of the R-A District. To encourage growth in the receiving area, developers in the receiving area "have the option in a Type 3 [noncontiguous conservation major subdivision] or 4 subdivision utilizing non contiguous parcels in the Sending Area for open space in a Planned Residential Development in accordance with § 253-113." It also provides that "[i]n exchange for permanently restricting the development of land in a Sending Area parcel, the density of the parcel in the Receiving Area may be increased to accommodate the number of units that would otherwise have been permitted in the restricted Sending Area."
Section 253-105C requires a yield plan and a site analysis plan that accounts for topography, wetlands, soil, threatened and endangered species, and an environmental assessment. Section 253-105D also provides that "[t]he tract of land to be preserved or developed may be held in single ownership or in multiple ownership."
Section 253-112 addresses ownership and maintenance of open space land and common facilities. All open space land must be permanently restricted from future subdivision or development. Ownership options for open space include fee simple transfer to the municipality, as long as there is no cost of acquisition to the municipality; ownership and control by a condominium association; a homeowners association; a private conservation organization; or dedication of easements to the municipality. In addition, the required open space or preserved land "may be included within one or more large `conservancy lots' of at least ten (10) acres provided the open space is permanently restricted from future development through a conservation easement, and the municipality is given the ability to enforce these restrictions."
Plaintiff Builders League filed a timely complaint in lieu of prerogative writs in which it alleged that Ordinance 2004-13 established a Transfer of Development Rights (TDR) program that was ultra vires because the Township is located in Gloucester County rather than Burlington County and that the ordinance was also contrary to the State Act.[2] The Township responded that the ordinance was consistent with the MLUL, specifically relying on a provision in N.J.S.A. 40:55D-65c, the Ogden Amendment. The Township also explained that the ordinance requires clustering of all residential subdivisions that produce more than five lots. The Township also noted that the challenged ordinance cannot be considered a TDR program because preserving property in a sending area and concentrating development in a receiving area is entirely voluntary because a person who owns property in a sending and receiving zone may choose to send some, all or none of the units permitted to be developed in the sending zone to the receiving zone.
Judge Bowen dismissed as without merit the Township's argument that the permissive nature of the ordinance distinguishes *94 it from a TDR program. He stated that the operative issue is whether the State Act is the exclusive authority enabling these developments with noncontiguous land. He noted that the Legislature amended N.J.S.A. 40:55D-65c to provide for cluster development between noncontiguous parcels. L. 1995, c. 364, § 2. Known as the Ogden Amendment, it was enacted several years after the Legislature authorized the Burlington Demonstration and several years before the Legislature authorized the implementation of TDR programs statewide. Judge Bowen held that the State Act is the exclusive statutory authority for a TDR program, that the challenged ordinance implemented a TDR program, and that the ordinance did not comply with the State Act.
We commence our review of the challenged ordinance with a recognition of several basic principles. A zoning ordinance is presumed valid. Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 350, 828 A.2d 317 (2003); Riggs v. Twp. of Long Beach, 109 N.J. 601, 610-11, 538 A.2d 808 (1988). "The party challenging the ordinance bears the burden of overcoming that presumption." Rumson Estates, supra, 177 N.J. at 350, 828 A.2d 317; Ward v. Twp. of Montgomery, 28 N.J. 529, 539, 147 A.2d 248 (1959).
A reviewing court may declare a zoning ordinance invalid if it violates the federal or state constitutions, if a specific provision of the ordinance is preempted by state or federal legal authority, or the ordinance exceeds the authority bestowed on the governing body by the MLUL. Rumson Estates, supra, 177 N.J. at 351, 828 A.2d 317; N.Y. SMSA Ltd. P'ship v. Twp. Council of Edison, 382 N.J.Super. 541, 551, 889 A.2d 1129 (App.Div.2006). The issue before this court is whether Ordinance 2004-13 exceeds the authority granted by the Legislature through the MLUL to regulate the density of development and preserve open space within the Township through the device of transferring development rights.
An analysis of Ordinance 2004-13 demonstrates that it seeks to provide for the transfer of development rights within the Township, that the ordinance does not conform to the State Act, and this nonconformity renders the ordinance invalid. It is not simply the establishment of sending and receiving zones within the R-A Residential District that renders the scheme adopted by the governing body a TDR program. The ordinance contains other earmarks of a TDR program, including preliminary studies of topography and critical habitat, restrictions on future development, density bonuses and municipal authority to enforce the development restrictions.
On appeal, the Township concedes that it has established a de facto TDR program. It argues, however, that it has the authority to channel development within the municipality and to take affirmative action to conserve and preserve open space and critical habitat. We agree. The Township also contends that the challenged ordinance is no more than an amendment to its existing planned unit development standards, and that the amendment is authorized by the Ogden Amendment to N.J.S.A. 40:55D-65c that allows "the clustering of development between noncontiguous parcels." Finally, the Township posits that it may channel development and preserve critical habitat through a program that has some characteristics of a TDR program without the complexity of the program outlined in the State Act. As to the latter propositions, we disagree.
*95 The MLUL governs the process of adopting or amending a zoning ordinance. N.J.S.A. 40:55D-62a. It also establishes the mandatory, N.J.S.A. 40:55D-62a, c and d, and discretionary provisions of a zoning ordinance. N.J.S.A. 40:55D-65. Section 65c allows, but does not mandate, a municipal governing body to provide districts for planned developments and, if it does so, may adopt standards "for the clustering of development between noncontiguous parcels." Ibid.
A "planned development" means "planned unit development, planned unit residential development, residential cluster, planned commercial development or planned industrial development." N.J.S.A. 40:55D-6. A "planned unit residential development" means "an area with a specified minimum contiguous or noncontiguous acreage of five acres or more to be developed as a single entity according to a plan containing one or more residential clusters, which may include appropriate commercial, or public or quasi-public uses all primarily for the benefit of the residential development." Ibid. While a planned development or planned unit residential development may be constructed on noncontiguous parcels, the ability to spread development over noncontiguous parcels is not without limitation. The planned unit residential development must still have the characteristics of a "single entity." Ibid. Furthermore, the ability to cluster development on noncontiguous parcels authorized by section 65c pertains only to planned developments as defined by the MLUL. Ordinance 2004-13 exceeds the scope of section 65c, is not limited to planned developments, and also does not require that properties in the sending and receiving areas be developed as a single entity or even be in common ownership.
The Township's contention that it may adopt a streamlined TDR program is also without merit. A municipality possesses only that authority conferred on it by the Legislature. N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 224, 729 A.2d 21 (1999). The MLUL confers on municipalities the power to adopt a master plan with a land use element and to adopt a zoning ordinance. N.J.S.A. 40:55D-28 and -62. There are some terms in the MLUL and some provisions of the MLUL that are mandatory. For example, N.J.S.A. 40:55D-4 defines "interested party" and a municipal governing body is not free to limit the litigational status of a citizen by ordinance. Rumson Estates, supra, 177 N.J. at 355, 828 A.2d 317. A municipality is also not free to expand the notice requirements of the MLUL. N.Y. SMSA, supra, 382 N.J.Super. at 551, 889 A.2d 1129. Finally, when the MLUL establishes criteria for a specific situation or confers authority on a specific entity, a municipality is not free to chart its own course. See Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 69, 711 A.2d 282 (1998) (only the zoning board has authority to certify nonconforming uses); Acorn Montessori Sch. v. Bethlehem Twp. Planning Bd., 380 N.J.Super. 216, 235, 881 A.2d 784 (Law Div.2005) (planning board's restrictive view of child care programs is inconsistent with provision of MLUL that designates child care centers as permitted uses).
Here, the MLUL expressly provides that a municipality may "[p]rovide for sending and receiving zones for a development transfer program" but, if it elects to do so, it must follow the State Act. N.J.S.A. 40:55D-65j. Even without this express statutory provision, we would have no difficulty in holding that the State Act is the exclusive authority for establishment *96 of a TDR program in light of the legislative history of the program.
The Legislature demonstrated a readiness through the Burlington Demonstration Project to study this land use mechanism. Simultaneously, the Legislature acknowledged that any TDR program was complex and that implementation statewide required study and careful consideration. The State Act is the fruit of that study and the differences between the Burlington Demonstration Project and the State Act reflect the experience gleaned over fifteen years and the various adjustments required for statewide success of the program. An analysis of the State Act also demonstrates that any TDR program must comply with all of the provisions of the State Act. Simply stated, municipalities are not free to pick and choose the elements of the TDR program that it likes and disregard the provisions that it finds burdensome.
A TDR program implemented by a municipality is complex. It requires substantial advance planning and study, as well as review by the local planning board, the county planning board, and the Office of Smart Growth. A TDR program also requires continuous study. Significantly, the Township omitted several of the advance studies, such as the real estate market analysis and the infrastructure studies required by the State Act. N.J.S.A. 40:55D-140 and -141. Similarly lacking is approval by the State Planning Commission, N.J.S.A. 40:55D-140e, or the county planning board. N.J.S.A. 40:55D-149.
Ordinance 2004-13 effectively establishes a TDR program. The Township failed to follow the pre-adoption procedures required by the State Act and the ordinance does not contain many of the safeguards required by the State Act. We hold, therefore, as did Judge Bowen, that these departures and omissions require invalidation of Ordinance 2004-13. The September 23, 2005 order invalidating this ordinance is affirmed.
Affirmed.
NOTES
[1] The ordinance was adopted before the effective date of the State Act.
[2] In Count Three, plaintiff alleged that the ordinance was invalid because it exempts developments holding preliminary or final site plan approval from its application. It also alleged that the Township failed to provide for the verbatim recording of the proceedings regarding adoption of the ordinance (Count Four), that the ordinance limits the term of a general development plan to five years contrary to the MLUL (Count Five), that several other provisions of the ordinance are not authorized by the MLUL (Count Six), that the density bonus proposed for the district is contrary to the Fair Housing Act (Count Seven), and that the ordinance violates the federal and State constitutions (Count Eight).