**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2604-19

HIDDEN OAK WOODS, LLC,

     Plaintiff-Respondent,

v.

P&F GIANCOLA, d/b/a
GIANCOLA WRECKING AND
AUTO SALES,

     Defendant-Appellant,

and

DEBRA RAINWATER, PP, AICP,
in her capacity as Zoning Officer
of the Township of East Brunswick,

     Defendant,

and

THE TOWNSHIP OF EAST
BRUNSWICK,

     Defendant-Respondent.

_____

Submitted March 24, 2021 – Decided July 26, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000140-17.

Thomas Williamson, attorney for appellant.

Eckert Seamans Cherin & Mellott, LLC, attorneys for respondent Hidden Oak Woods, LLC (Frank J. Petrino, of counsel and on the brief; Victoria D. Britton, on the brief).

Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for respondent The Township of East Brunswick (Michael J. Baker and Joseph D. Palombit, of counsel and on the brief).

PER CURIAM

Defendant P&F Giancola d/b/a Giancola Wrecking and Auto Sales appeals from the February 19, 2020 order entered by Judge Vincent LeBlon granting plaintiff-respondent Hidden Oak Woods, LLC summary judgment and directing defendant to abate various zoning violations arising from defendant's use of its property.[1] For the reasons outlined below, we affirm.

---

[1] Because no other named defendant appeals from the February 19, 2020 award of summary judgment, and defendant-respondent Township of East Brunswick joins plaintiff in asking us to affirm the February 19 order, we refer to P&F Giancola as defendant throughout this opinion.

I.

Plaintiff owns approximately forty-one acres of land in the Township of East Brunswick (Township) that was designated for construction of an inclusionary development in the Township's Third Round Housing Element and Fair Share Plan (HEFSP). The property was rezoned from Industrial/Manufacturing to Multiple Dwelling Apartment, i.e., a residential zoning district, to accommodate a planned 275-unit development, with twenty percent of the units set aside for low- and moderate- income families.

Defendant's property, also referenced in the record as the "Giancola property," is situated diagonally across the street from plaintiff's property. Defendant has owned and operated an automobile wrecking, salvage, and storage business since 1987, and its predecessor in title obtained a use variance from the Township zoning board in 1955, permitting those uses on defendant's property. At the time the 1955 use variance was granted, defendant's property was subject to the Township's 1952 zoning ordinance.

In August 2017, plaintiff filed a complaint against the Township, Debra Rainwater,[2] in her capacity as Township zoning officer, and defendant, wherein it alleged declaratory relief should be granted in lieu of mandamus so that the

---

[2] Defendant Debra Rainwater did not submit a responding brief.

zoning officer and the Township enforced the terms and conditions of the Township's 1952 zoning ordinance, as well as its 1963 junkyard and current zoning ordinances, against defendant. Plaintiff also sought to restrain defendant's purported nuisances on defendant's property.

According to plaintiff, the 1955 use variance granted to defendant's predecessor did not allow defendant to subsequently engage in various activities after it assumed ownership of the property. For example, plaintiff contended the 1952 zoning ordinance did not authorize, and therefore prohibited, front yard parking, yet defendant used its property for that purpose without securing a variance. Plaintiff also claimed defendant violated the 1952 zoning ordinance because its operations were not contained "within a building or a walled enclosure at least six . . . feet high." Additionally, plaintiff alleged defendant violated the Township's 1963 junkyard ordinance, which prohibited parking in the front yard and required walled enclosures to be at least eight feet high so defendant's junkyard would not be visible from a public street.

Further, plaintiff asserted defendant's property violated the Township's current zoning ordinance because the cars parked in defendant's front yard were "not confined within the required bounded area" even though defendant's building was situated less than 175 feet from the front property line, and the area

between the parked cars and the front property line was "not screened" as required. Moreover, plaintiff alleged defendant violated the Township's current ordinance as to signage and advertising because defendant had "not applied for and/or received a zoning sign permit for any of the signage or advertising displays on" its property. Based on defendant's alleged multiple violations, plaintiff argued defendant was engaged in "an illegal and negligent use of [its] . . . property" "against the public interest," which adversely affected "the marketability of the Inclusionary Development to be constructed on the Hidden Oak Property."

II.

The parties unsuccessfully attempted to resolve their dispute by engaging in settlement discussions. When negotiations failed, plaintiff moved for summary judgment against defendant; the Township joined in plaintiff's application.

Judge LeBlon heard oral argument on plaintiff's summary judgment motion in September 2019. During argument, plaintiff's counsel acknowledged there was a question as to whether defendant's property was in a light or a heavy industrial zone in 1955. Plaintiff's counsel argued the issue was immaterial because the standards were the same for both zones, other than for front yard

A-2604-19

setbacks. Thus, plaintiff's attorney represented, "for the purposes of this motion, we will concede . . . there is not a violation of the front yard setback." Counsel for plaintiff then recounted the ordinance violations outlined in its complaint and asked the court to "take judicial notice of the negative impact that the continual and long-standing zoning violations have had on the surrounding and neighboring properties, including Hidden Oaks."

The Township's attorney confirmed during argument that his client agreed with plaintiff's position, even though the Township was a named defendant. He highlighted that after the 1955 use variance authorized defendant's predecessor to operate an auto wrecking, salvage, and storage business, defendant "intensified and expanded" the use of the property to include used car sales. He further stated that even if defendant's operations were a "preexisting nonconforming use, there's also evidence from the pictures that it's been expanded. So we don't think it's preexisting, but even if it were, clearly [it] can't be expanded into the front yard with used car sales going up front." Further, the Township concurred with plaintiff that defendant violated the Township's sign ordinance.

Counsel for defendant noted the historical use of the property, remarking that "ever since 1955, a junkyard has been operated at this property without

6

interruption for nearly 65 years now," and that "no later than 1973, the [prior] owner of the property . . . was also selling used cars at the Giancola property." Similarly, defendant argued it had photographic evidence from 1969 and 1972 showing "cars were parked in the front yard of the property." Further, defendant argued that when defendant's owners bought the property and business in 1987, "the building had two stories, and there were three driveways on the property." Moreover, defendant claimed "all necessary municipal and state licenses needed to operate [defendant's] business" were obtained as recently as the past year, and "any off-street parking on any location on the property . . . is expressly permitted." Further, defendant argued it had complied with the Township's fencing requirement, that there was no signage limitation under the 1952 ordinance when defendant's predecessor owned the property, and the "use of the Giancola property . . . qualif[ied] as a best and nonconforming use because the use existed at a time during which . . . the 1952 ordinance[] allowed such uses." Counsel added that "such vested nonconforming uses of property rights . . . cannot be voided or lost easily," and "[e]ven if the court were to consider [the] recent ordinance, and the junkyard ordinance . . . , plaintiff is still not entitled to summary judgment."

7

### III.

On January 29, 2020, in a well-reasoned and thorough opinion, Judge LeBlon rejected defendant's arguments and awarded plaintiff summary judgment; on February 19, 2020, he issued a conforming order. In his opinion, the judge initially noted defendant's property was in a heavy industrial zone under the 1952 ordinance, even though defendant asserted its property was in the light industrial zone under that ordinance. The judge then methodically itemized defendant's "current and historic violations of the Township Zoning Code" as well as defendant's violations of its 1955 use variance. We need not reiterate each finding of a violation here. Instead, we cite to some of those violations found by the judge to demonstrate why we are persuaded there is no basis to disturb his summary judgment award.

For example, the judge noted that considering defendant's property was in the heavy industrial zone under the 1952 ordinance, that ordinance required "a minimum front yard building setback of 100' from the public roadway" and "there has been no compliance with the 100' front yard setback." The judge found "a variance from this requirement was neither sought nor given at the time the 1955 Use Variance was granted for the Giancola Property." Because defendant had asserted its property was located in the light industrial zone under

the 1952 zoning ordinance, Judge LeBlon clarified that "[t]he zoning standards applicable to Giancola's violations of the Township's 1952 zoning ordinance are the same in the light . . . and the heavy industrial zone[s] with the exception of front yard setbacks," but significantly, whether defendant's property was in a heavy or light industry zone under the 1952 ordinance was not a material fact sufficient to defeat summary judgment because plaintiff "concede[d], for the purposes of this motion only," that defendant's property was in the light industrial zone. Therefore, the judge determined there was "no violation of the front yard setback requirement . . . under the 1952 zoning ordinance" for the purpose of plaintiff's summary judgment application.

Additionally, the judge determined the 1952 zoning ordinance required an automobile wrecking and salvage business to be conducted within a building or walled enclosure six feet high, yet based on aerial photographs of defendant's property, it was evident defendant's property was not enclosed by a six-foot wall or fence, "and a variance from this requirement was neither sought nor given at the time the 1955 Use Variance was granted for the Property."

Further, Judge LeBlon found defendant's business operations on its property "constituted a junkyard" under the 1963 junkyard ordinance. He concluded defendant was in violation of the provisions of this ordinance, "which

is a licensing ordinance for junkyards within the Township." The judge explained "that when two enabling ordinances (licensing and zoning) exist, provisions relating to regulation of the property need not be confined to only the zoning ordinance." Finding the 1963 junkyard ordinance and the current zoning ordinance "must be construed together," the judge determined the junkyard ordinance did not permit front yard parking, and significantly,

> the current zoning ordinance prohibits front yard parking except in a limited circumstance that does not exist herein (i.e., if the front of the building is 175' from the property line, then front yard parking is permitted in an area bounded by a line 125' from the street and the front of the building screened by landscaping). Therefore, under both ordinances, front yard parking is not permitted without a variance, which Giancola has never applied for or received. Yet, . . . Giancola parks motor vehicles in the front yard up to the property line as well as in the Township's right of way.

Additionally, when construing the 1963 junkyard and current zoning ordinances together, the judge found "a uniform and solid eight-foot fence that screens the junkyard operations on the Giancola Property from the public streets is required for all junkyard operations in the Township," but defendant maintained a "mismatch of walls and fencing of varying heights on the Giancola property that does not entirely surround it and does not screen the junkyard operations from view."

The judge also concluded that under the current zoning ordinance, defendant's property is in the Industrial/Manufacturing zone, requiring a 175-foot setback from the front property line when facing a residential development, and that automobile parking in the front yard must be within the bounded area and 125 feet from the street. Nevertheless, defendant's property was in front of a residential development and its setback was not at least 175 feet. The judge stated "the Giancola property is parking motor vehicles only twenty-eight . . . to thirty-four . . . feet from the front property line and within the Township's right of way." Additionally, the judge found defendant violated the front yard setback of 100 feet for principal buildings with frontage on a street that is the boundary line of a residential zone.

Further, the judge found defendant was in violation of the Township's sign ordinance, as defendant never received authorization for approximately eight signs located on the property. He also found defendant's property exhibited "multiple flat signs," rather than one authorized flat sign, which "appear[ed] to exceed the fifteen percent . . . cap" "of the area of the side of the building to which it is attached." The judge noted that defendant conceded the 1952 zoning ordinance "is silent on the issue of signage, and that it did not obtain a sign permit from the Township when it updated the signage" upon purchasing the

11

property. The judge also stated silence under the 1952 ordinance "in no way indicates authorization for any signage."

Additionally, Judge LeBlon found the 1955 use variance authorized defendant to use the property "for an automobile wrecking, salvage, and storage business, and nothing else." Because the use of defendant's property intensified and expanded to include towing services and sales, "without a variance or other approval," and these "expanded and intensified uses are not permitted in the [Industrial/Manufacturing d]istrict where the Giancola Property is located," such expansions and intensifications constituted "zoning violations under the Township Code." The judge added,

> it is indeed nonsensical for Giancola to assert that the sale of used automobiles, which began after the 1955 Use Variance was obtained for the property for different and limited uses (i.e., automobile wrecking, salvage, and storage) is a pre-existing non-conforming use that does not require a use variance. A property owner cannot add additional, non-permitted uses to a property after obtaining a use variance without making application to the local zoning board, and obtaining approval for, a new or expanded use variance.

After finding plaintiff was an "interested party" under N.J.S.A. 40:55D-18, Judge LeBlon concluded:

> [t]he aforementioned zoning violations maintained by [defendant] on [its] [p]roperty are an illegal use of the . . . [p]roperty, as well as eyesores and nuisances . . . .

12

The various zoning violations and nuisances maintained by [defendant] . . . interfere with [plaintiff's] right to equal use and enjoyment of [its] . . . [p]roperty and will also adversely affect the marketability of the inclusionary development to be constructed thereon during the Third Round. . . . The continuation of the aforesaid zoning violations and nuisances by [defendant] . . . adversely impacts the economic feasibility of [plaintiff's] inclusionary development and is also against the public interest.

Accordingly, the judge determined plaintiff was entitled to summary judgment and defendant was required to "remedy and abate all zoning violations and nuisances on . . . its [p]roperty within 30 days."

IV.

On appeal, defendant presents a mixture of novel and recycled arguments, many of which are unsupported by citations to the record or a legal authority and are presented in a conclusory fashion. Regarding the arguments newly raised before us, defendant contends: (1) plaintiff did not prosecute the correct type of action because it sought relief for violations which were "quasi-criminal in nature"; (2) the trial court improperly relied on "material misrepresentation[s]" of plaintiff's counsel; and (3) "although [defendant's] first attorney did not name this as a Cascade situation," "[h]e presented the idea that

a permitted use in a higher zone is permitted in a lower zone," and "under a

Cascade approach," defendant did not need a variance to sell used cars.[3]

We decline to reach these newly minted arguments.

> It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."
>
> [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also State v. Robinson, 200 N.J. 1, 19 (2009) ("Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves.").]

Here, defendant's novel arguments are neither jurisdictional in nature nor do

they substantially implicate the public interest.

Moreover, to the extent defendant argues the judge relied on a material

misrepresentation of facts as set forth in the statement of material facts included

---

[3] Defendant concedes it has offered no legal authority to support its "cascade zoning" argument, that "the Cascade approach has vanished and has been replaced by a [d]iscrete and [d]etailed [z]oning [o]rdinance," and "New Jersey case law currently provides that a use not expressly provided for in a variance is prohibited."

with plaintiff's summary judgment motion, we reject this contention. Specifically, defendant argues

> [a] reading of "Exhibit D" . . . clearly shows[] that this crucial document to [plaintiff's] proving the violations of the conditions as to the 1955 Use Variance is [not] the 1955 Use variance. "Exhibit D" is actually a copy of the incomplete [application]. It appears to be incomplete in that the [fourth] page . . . has [two] at the very top and begins with item [twelve]. This suggests that page [one], with items . . . [one] to [eleven], is missing.

This argument ignores that defendant admitted to facts concerning the 1955 use variance, both in its "response to statement of undisputed material facts" and its answer to the complaint. Indeed, in its "response to statement of undisputed material facts," defendant outright acknowledged,

> [i]n or about 1955, Giancola (or its predecessor in interest) was granted a use variance by the Township's Zoning Board of Adjustment for the operation of an automobile wrecking, salvage, and storage business on the Giancola Property (the '1955 Use Variance'). See 1955 Use Variance attached to the [certification of plaintiff's counsel] as Exhibit D.
>
> [(Emphasis added).]

The record also reflects defendant made a similar admission in paragraph eighteen of its answer to plaintiff's complaint. Further, defendant admitted in its response to plaintiff's statement of undisputed material facts that "[a]t the

15

time the 1955 Use Variance was granted, the Giancola Property was subject to the Township's 1952 zoning ordinance." Given this record, plaintiff understandably denies it misrepresented

> facts, material or otherwise, when referring to Exhibit D of the Motion for Summary Judgment as the "1955 Use Variance," but rather relied on [defendant's] own admissions in its Answer and its opposition to [plaintiff's] Statement of Undisputed Material Facts in the underlying Motion for Summary Judgment confirming that Exhibit D constituted the sum and substance of the use variance obtained by [defendant's] predecessor . . . . To put it simply, [plaintiff] could not have misrepresented the facts when [defendant] itself relied on Exhibit D to support the existence of the 1955 Use Variance . . . . Accordingly, and contrary to [defendant's] newly raised arguments . . . , [plaintiff] did not misrepresent the nature of Exhibit D to the underlying Motion for Summary Judgment. In fact, [defendant] admitted on at least three occasions that Exhibit D is the essence of the 1955 Use Variance that its predecessor obtained for the Giancola Property.

V.

Relying on arguments previously made before Judge LeBlon, defendant contends: (1) plaintiff failed to establish operations at defendant's property were in violation of the ordinances it cited because a "nonconforming use existing at the time of an ordinance may be continued"; (2) plaintiff's claims about defendant's expanded and intensified use of its property lacked specificity; (3) plaintiff's proofs were lacking as to defendant's alleged improper use of the

16

property for towing, the sale of used cars, parts and tires, a second-story addition, its proximity to the front property line, and expansion into new areas; (4) plaintiff failed to establish defendant was in violation of the sign ordinance; and (5) the trial court erred in finding defendant's use of its property was a common law nuisance.  These arguments are unavailing.

It is well established that to balance the municipality's interest in amending and updating its zoning ordinances with a property owner's interest and right to maintain the use of its property, certain pre-existing, newly prohibited, nonconforming uses are permitted.  Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 68 (1998) (quoting Palatine I v. Planning Bd., 133 N.J. 546, 565 (1993)).  Such nonconforming uses may "co-exist with the ordinance that, on its face, prohibits them."  Ibid. (internal quotations omitted).  However, courts limit the scope of the nonconforming use so that it can conform with the current ordinance "as quickly as is compatible with justice."  Ibid. (quoting Town of Belleville v. Parillo's, Inc., 83 N.J. 309, 315 (1980)).  To qualify for a nonconforming use, the property owner "may apply in writing for the issuance of a certificate certifying that the use . . . existed before the adoption of the ordinance which rendered the use . . .

nonconforming."  Id. at 68-69 (quoting N.J.S.A. 40:55D-68) (alterations in original).  There is no suggestion by defendant that it followed this procedure.

We also note that N.J.S.A. 40:55D-70 gives a board of adjustment authority to grant a variance to a property owner to depart from the regulations of the zoning code and permit a use which does not conform to the code.  "An application for a use variance based on the assertion that a property is particularly suitable for a project requires an evaluation of whether the use, otherwise not permitted in the zone, . . . will promote the general welfare."  Price v. Himeji, LLC, 214 N.J. 263, 287 (2013).  Again, defendant does not argue it applied for a variance to deviate from the Township's regulations regarding its use of its front yard for parking cars or to maintain fencing shorter than the eight-foot requirement outlined in the 1963 junkyard and current zoning ordinances.  Likewise, defendant does not contest that it did not seek a variance for its non-conforming signs or its violation of the 100-foot setback requirement.  Further, in challenging the summary judgment award, defendant does not dispute that after the 1955 use variance was granted to its predecessor, defendant expanded its use of the property to include additional services, and it did so without seeking a variance.  As Judge LeBlon observed, "[a] property owner cannot add additional, non-permitted uses to a property after obtaining a use

variance without making application to the local zoning board, and obtaining approval for a new or expanded use variance." See Hantman v. Randolph Twp., 58 N.J. Super. 127, 135 (App. Div. 1959) (nonconforming uses "may not be enlarged as of right").

Regarding defendant's nuisance argument, we note property owners must use their land in a way that avoids detriment or injury to other property owners. Sans v. Ramsey Golf & Country Club, Inc., 50 N.J. Super. 127, 133 (App. Div. 1958). Courts look to whether a property owner's activities materially and unreasonably interfere with another's comforts or existence "not according to exceptionally refined, uncommon, or luxurious habits of living, but according to the simple tastes and unaffected notions generally prevailing among plain people." Id. at 134-35 (citations omitted). Here, the record amply supports Judge LeBlon's finding that defendant's activities interfered with the marketability of plaintiff's neighboring property once plaintiff's property became the site of a development included in the Township's court-approved Third Round HEFSP.

When reviewing an order granting or denying summary judgment, we apply the same standard as the trial court. State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)). In

19

A-2604-19

considering a motion for summary judgment, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party." Bauer v. Nesbitt, 198 N.J. 601, 605 n. 1 (2009) (citing R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Courts must grant summary judgment if the evidence shows that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Even if the pleadings show there may be an issue of material fact, a trial court must also look to and consider all the papers on file to determine if there is, in fact, a dispute. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Bare conclusions from the pleadings are not enough to defeat a summary judgment application without factual support from the papers. United States Pipe & Foundry Co. v. American Arbitration Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961). On the other hand, opposing parties may show that evidentiary materials relied upon raise credibility issues and thus defeat a motion for summary judgment. D'Amato v. D'Amato, 305 N.J. Super. 109, 114 (App. Div. 1997). In deciding a summary judgment motion, the trial court must only determine whether there is a genuine issue of material fact but should not render a decision on such issues. Brill, 142 N.J. at 540. Issues of law are subject to the de novo standard of review, and

20

thus the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (citations omitted).

Having reviewed the record, the parties' briefs, and applicable legal principles, we are satisfied we have no basis to disturb Judge LeBlon's February 19, 2020 order, and affirm the order substantially for the reasons he expressed in his thoughtful and comprehensive January 29, 2020 opinion.

To the extent we have not expressly addressed any of defendant's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-2604-19