**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3980-22

VINCENT A. VILLANO and JOYCE
VILLANO,[1]

     Plaintiffs,

and

SANTIAGO BORJA and
LAUREN JACOBSON
BORJA,

     Plaintiffs-Appellants,

v.

SAL MADISON, LLC, SAL LAROSA,
JR., KENNETH J. GAMBELLA, and
GIGI'S OCEANPORT PIZZA,

     Defendants-Respondents,

and

THE BOROUGH OF OCEANPORT

---

[1] Vincent A. Villano and Joyce Villano declined to appear at trial. As a result, the judge dismissed their claims against defendants on November 2, 2022.

and JOHN JOHNSON,[2]

       Defendants.

_____

<div style="margin-left: 2em;">

Argued November 14, 2024 – Decided December 2, 2024

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1741-20.

Gary E. Fox argued the cause for appellants (Fox & Melofchik, LLC, attorneys; Gary E. Fox, on the briefs).

Joel N. Kreizman argued the cause for respondents (Scarinci Hollenbeck, LLC, attorneys; Joel N. Kreizman, on the brief).

</div>

PER CURIAM

Plaintiffs Santiago Borja and Lauren Jacobson Borja[3] appeal from an August 3, 2023 order of "no judgment" after a three-day bench trial before Judge Mara Zazzali-Hogan. We affirm.

---

[2] The claims against defendants Borough of Oceanport and John Johnson were voluntarily dismissed on September 22, 2021.

[3] Because the Borjas are married, we refer to them by their first names. No disrespect is intended.

We recite the facts from the trial testimony. Defendant Sal LaRosa, Jr. (LaRosa), through defendant Sal Madison, LLC (Sal Madison), owns property (Property) located in Oceanport's R-5 residential zone. The Property consists of a two-family home and a pizza shop. Plaintiffs live in a home adjacent to the Property. Lauren has lived next door to the Property since 2008. Santiago moved into Lauren's home in 2013.

Because the historical use of the Property was significant in Judge Zazzali-Hogan's decision, we recite its history in some detail.

In 1925, John and Mamie Canevari acquired the Property from Carl and Anna Lacker. In 1932, the Property had a grocery store. In 1933, Oceanport adopted a zoning code and ordinances. In 1944, the Canevaris sold the Property to Fred W. and Audrey Zito (Zito). Zito then ran the grocery store. In the 1980s, Zito rented the Property to Vincent Renzo to "sell pizzas and subs."

In 1984, Renzo requested permission from the Oceanport Zoning Board of Adjustment (Board) to "sell pizza for consumption off-premises and to install a pizza oven." On June 6, 1984, the Board held a public hearing on Renzo's application for a zoning interpretation (1984 Hearing). According to the minutes of the 1984 Hearing, Renzo and Zito testified. In summarizing their testimony, the minutes stated the Property "was always a food store i[.]e[.]: [a] grocery

A-3980-22

store . . . then in 1971[,] [Zito] rented to his grandson who sold subs, candy, soda and papers. His grandson expanded by purchasing a pizza oven from a merchant in Asbury Park and sold [p]izza from the store." According to the meeting minutes, Renzo told the Board there was no plan to expand the pizza shop as it existed and there was no consumption of food on the premises.

In the 1984 Hearing minutes, the Board's attorney offered an interpretation of Renzo's application. The attorney explained the "store [on the Property] has sold food for the past [fifty-two] years[,] . . . there has been no change in the operation of this business[,] and the sale and making of pizzas is not necessarily a change in type of business [because] it is still food." The Board's attorney opined Renzo did not require a variance because there was "[n]o change in the use."

The Board approved Renzo's application. In its June 27, 1984 memorializing resolution (1984 Resolution), the Board explained, "[t]he [Property] ha[s] almost exclusively been used as a food store since 1932, and accordingly, [such a] use of the [Property] constitutes [a] pre-existing nonconforming use." The 1984 Resolution concluded "the installation of a pizza oven and the sale of pizzas to the general public not for consumption on the premises d[id] not constitute a change or expansion of said pre-existing

4

nonconforming use."  The 1984 Resolution stated Renzo "d[id] not require a variance from the Board; and [he] may continue to operate the premises [as a pizza shop]."

Renzo operated a pizza shop on the Property until 2010.  In 2010, Renzo sold the pizza shop to another family, who operated the establishment as a pizza shop from 2010 to 2014.  After 2014, the Property went unused until Sal Madison bought it in 2015.  From 2017 to 2019, the Property operated as Nicky's Pizzeria.

In 2020, Sal Madison leased the Property to defendant Kenneth J. Gambella, who opened defendant Gigi's Oceanport Pizza (Gigi's) the same year. In May 2020, Gambella obtained a Certificate of Continued Occupancy from Oceanport allowing the "[c]ontinuation of [a] pre-existing nonconforming use." Oceanport's Zoning Officer determined Gigi's "complie[d] [with the Borough's Zoning Code] as per [the 1984 R]esolution."

According to the trial testimony, Gigi's has "a pizza oven, a cut table, a pizza making station[,] . . . a little back area where there's a bathroom and a . . . little sink for washing a few dishes."  Gigi's has no dining tables and the interior space accommodates about two customers.  Unlike the prior pizza establishments on the Property, Gigi's menu includes appetizers, soups, salads,

A-3980-22

sandwiches, pasta, and desserts. In addition, Gigi's is open about forty hours more per week than the pizza establishment run by Renzo.

After lodging several complaints with the Oceanport Police Department and the municipality, plaintiffs filed a complaint against Sal Madison, LaRosa, Gambella, Gigi's, and others. Plaintiffs alleged Gigi's had no legal right to operate in a residential zone. Further, plaintiffs asserted Gigi's business constituted actionable nuisance.

Judge Zazzali-Hogan conducted the three-day bench trial beginning October 31, 2022. The judge heard testimony from the following witnesses: Lauren, Santiago, Gambella, LaRosa, Oceanport's Police Chief, Renzo's son-in-law, and plaintiffs' neighbor.

Judge Zazzali-Hogan placed her decision on the record on August 3, 2023. On the issue of whether Gigi's was a valid pre-existing nonconforming use, the judge explained the parties agreed a pizza shop was not a permitted use in Oceanport's R-5 residential zone. Accordingly, the judge determined defendants bore the burden of demonstrating the Property's "current use is pre-existing and nonconforming, such that the quality and the character of the current use is one that predated the first zoning ordinance in Oceanport . . . in . . . 1933." Because the judge concluded defendants satisfied their burden of proof, she explained

6

the burden shifted to plaintiffs to demonstrate the 1984 Resolution, allowing a pre-existing nonconforming use of the Property as a pizza shop, was invalid.

The judge relied on the minutes of the 1984 Hearing and 1984 Resolution in concluding the Property was used as a food establishment since 1932, before the municipality adopted its zoning code and ordinances. The judge noted the 1984 Resolution declared the Property a valid pre-existing nonconforming use.

The judge also rejected plaintiffs' argument that the 1984 Resolution was void because the Board failed to publish proper notice. The judge found plaintiffs failed to proffer any witnesses in support of this argument. Judge Zazzali-Hogan further determined the newspaper search for public notice conducted by plaintiffs' counsel, limited to the archives of one specific newspaper, was insufficient because there were other local newspapers in circulation in 1984 that counsel did not search. Additionally, because they did not live next door to the Property until 2008, plaintiffs would not have received notice of Renzo's 1984 application to the Board. Accordingly, Judge Zazzali-Hogan found plaintiffs failed to prove the 1984 Resolution was void or otherwise invalid.

Further, the judge rejected plaintiffs' contention that Gigi's use of the Property dramatically differed from the prior businesses. Based on the evidence

7

adduced during the trial, Judge Zazzali-Hogan concluded, "the [Property's] current use is substantially similar to how Renzo used the premises. And although the evidence is sparse, the [1984 R]esolution and [June 6, 1984], meeting minutes dictate[d] a finding that [the Property] always operated as a food store."

The judge also rejected plaintiffs' assertion that the pre-existing nonconforming use of the Property was abandoned by prior owners. According to plaintiffs, the grocery store on the Property "ceased operation in 1969, when it became a television and radio repair and sales store." However, plaintiffs' evidence in support of their contention came from a publication that plaintiffs were unable to authenticate. Although the judge considered the publication, she was "hesitant to rely on it, because of . . . potential inaccuracies." The judge explained she gave greater weight to the 1984 Resolution and minutes of the 1984 Hearing maintained by Oceanport that declared the Property to be a lawful pre-existing nonconforming use.

Additionally, the judge rejected plaintiffs' nuisance claim. While the judge found the "increased activity" associated with Gigi's "bothered or annoyed" plaintiffs, their allegations regarding increased noise, garbage, odors, and traffic were "unsupported or simply contradicted by other testimony." Judge

8

Zazzali-Hogan found plaintiffs "only articulated annoyance" and failed to demonstrate Gigi's "materially interfere[d] . . . with any ordinary comfort or any day-to-day activities" to prove their nuisance claim.

In her August 3, 2023 order for judgment, Judge Zazzali-Hogan wrote: "Plaintiffs . . . failed to meet their evidentiary burden to demonstrate that the [1984] Resolution [was] void or that Gigi's ha[d] no legal right to continue its current operations and failed to demonstrate a cause of action for nuisance." As a result, the judge found "no judgment" for plaintiffs.

On appeal, plaintiffs argue the judge should have found Gigi's had no legal right to operate in a residential zone. They also contend the 1984 Resolution is void for improper notice, the use was abandoned in 1969, and Gigi's illegally expanded the nonconforming use. Plaintiffs also claim the judge erred in dismissing their nuisance claim because they proffered evidence that Gigi's operation resulted in excessive noises, unpleasant smells, and increased traffic.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). We defer "to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions."

9

Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "That is so because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020) (citing State v. Elders, 192 N.J. 224, 244 (2007)).

Accordingly, "[f]actual findings premised upon evidence admitted in a bench trial 'are binding on appeal when supported by adequate, substantial, credible evidence.'" Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 215 N.J. 409, 421 (2013) (quoting Cesare, 154 N.J. at 412). We will "not disturb the factual findings and legal conclusions of the trial judge" unless "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc., 65 N.J. at 484). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to

A-3980-22

any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, allows an "interested party" to seek injunctive relief against a party violating a zoning ordinance. N.J.S.A. 40:55D-18. An interested party is "any person . . . whose right to use, acquire, or enjoy property is or may be affected by" the violation of a zoning ordinance. N.J.S.A. 40:55D-4. The definition of an interested party "includes a neighbor." Harz v. Borough of Spring Lake, 234 N.J. 317, 322 (2018). Here, plaintiffs claim Gigi's is not a valid pre-existing nonconforming use and violates Oceanport's zoning ordinance prohibiting businesses in a residential zone.

A "nonconforming use is 'a use or activity which was lawful prior to the adoption, revision[,] or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision[,] or amendment.'" Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 106 (2011) (quoting N.J.S.A. 40:55D-5). "Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction

thereof." N.J.S.A. 40:55D-68. "The burden of proving the existence of a nonconforming use is upon the party asserting such use." Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J. Super. 420, 432 (App. Div. 2002) (citing Ferraro v. Zoning Bd., 321 N.J. Super. 288, 291 (App. Div. 1999)).

The MLUL allows any person who has an interest in "land upon which a nonconforming use or structure exists [to] apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming." N.J.S.A. 40:55D-68. Applications for certificates of nonconformity "may be made . . . at any time to the board of adjustment." Ibid. The applicant bears the burden of proof. Ibid.

Here, there was ample evidence demonstrating the operation of a food establishment on the Property since 1932, which predated Oceanport's adoption of a zoning code in 1933. The trial proofs established Renzo applied to the Board in 1984 for a certificate declaring the pizza shop on the Property to be a valid, pre-existing nonconforming use. After hearing testimony from Renzo and others, the Board concluded the Property operated as a food establishment "almost exclusively" since at least 1932. The Board memorialized its decision in the 1984 Resolution, stating "the [Property] constitutes [a] pre-existing

12

nonconforming use." Based on the trial testimony and the documents admitted at trial, including the minutes of the 1984 Hearing and 1984 Resolution, Judge Zazzali-Hogan concluded the Property "always operated as a food store" and thus was a valid, pre-existing nonconforming use.

The judge also properly rejected plaintiffs' notice argument. The MLUL requires public notice for a hearing on an application. N.J.S.A 40:55D-12(a). Notice must be given "by publication in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality." Ibid. Property owners "within 200 feet . . . of the property which is the subject of such hearing" are also entitled to notice by certified mail. N.J.S.A 40:55D-12(b). The notice requirements apply to applicants seeking a certificate for a nonconforming use. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 73 (1998).

In Stafford, our New Jersey Supreme Court held applications for nonconforming use certificates under N.J.S.A. 40:55D-68 are "applications for development," and must comply with the MLUL's notice requirements. Ibid. Because the Court determined imposing a notice requirement did not result in prejudice to the petitioner, the Court applied its holding retroactively. Ibid.

13

The Court in Stafford applied the facts specific to that case and concluded the petitioner would not suffer prejudice by imposing the notice requirement under the circumstances as presented. In Stafford, unlike the present matter, the nonconforming use certification was issued just three years before the Court issued its opinion.

However, in this case, the Board adopted the 1984 Resolution, confirming the pre-existing nonconforming use of the Property fourteen years before the Court's decision in Stafford, and nearly forty years before plaintiffs filed their lawsuit. On these specific facts, we decline to require defendants demonstrate publication of notice of a resolution adopted almost forty years earlier.

Additionally, we reject plaintiffs' argument that Judge Zazzali-Hogan "improperly shifted the burden to plaintiff[s] to prove that the 1984 [R]esolution is void." It is well-settled that "[a] board of adjustment's action is presumed to be valid, and the party attacking it has the burden of proving otherwise." Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 38 (App. Div. 2003). Plaintiffs failed to cite any case law to the contrary.

Here, plaintiffs challenged the validity of the 1984 Resolution, arguing that notice was defective. Because a zoning board's actions, including the

14

issuance of memorializing resolutions, are presumptively valid, plaintiffs had the burden of proving the 1984 Resolution was invalid and failed to do so.

Additionally, because plaintiffs did not live in Oceanport in 1984, the judge correctly concluded plaintiffs had no personal knowledge regarding notice of the 1984 Hearing and 1984 Resolution. Nor was the certification from plaintiffs' counsel sufficient to prove lack of notice. As the judge aptly noted, there were several newspapers in circulation in Monmouth County in the 1980s, and plaintiffs' counsel only searched the archives maintained by the Asbury Park Press. Additionally, the judge found plaintiffs failed to subpoena any witnesses to offer testimony on the notice issue.

We also agree Judge Zazzali-Hogan rightly rejected plaintiffs' argument there was temporal or physical abandonment of the Property as a food establishment. "The traditional test of abandonment requires the concurrence of two factors: (1) an intention to abandon, and (2) some overt act or failure to act which carries a sufficient implication that the owner neither claims nor retains any interest in the subject matter of the abandonment." S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Borough of Stratford, 373 N.J. Super. 603, 613-14 (App. Div. 2004).

15

"[T]he property owner [asserting the pre-existing use] has the ultimate burden with respect to the issue of abandonment as well as the existence of a nonconforming use."  Berkeley Square Ass'n, Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255, 269 (App. Div. 2009).  But a party challenging the pre-existing nonconforming use "must initially come forward with sufficient evidence of temporal or physical abandonment."  Ibid.

Here, plaintiffs failed to proffer any competent admissible evidence of temporal or physical abandonment of the use of the Property for the sale of food. The judge concluded plaintiffs' proffering of a passage from a retrospective pamphlet about the Borough of Oceanport, purporting to establish the use of the Property in 1969 as a television and radio repair shop, was rife with inconsistencies based on the trial testimony.  Further, the judge concluded it was "not clear who wrote the book, . . . not clear when or for what purpose the book was written, and . . . no one was able to authenticate it."  Thus, Judge Zazzali-Hogan relied on the 1984 Hearing and 1984 Resolution, as credible and competent official government documents, declaring the Property to be a valid pre-existing nonconforming use.

Nor do we discern any error in Judge Zazzali-Hogan's rejecting plaintiffs' claim that Gigi's expanded the pre-existing nonconforming use.  "[A]n existing

16

nonconforming use will be permitted to continue only if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance." Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 316 (1980). "[N]onconforming uses may not be enlarged . . . except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference." Ibid. "If the present use is substantially similar to the use at the time it became nonconforming, it will be permitted to continue." Bonaventure Int'l, Inc., 350 N.J. Super. at 433.

We defer to Judge Zazzali-Hogan's factual determination that Gigi's and the prior business establishments on the Property sold food. Based on the trial testimony, the judge found plaintiffs failed to establish any change in the type of businesses operated at the Property. Gigi's may use more kitchen appliances and be open longer hours than the prior pizza shops, but, as the judge concluded, plaintiffs failed to demonstrate how such differences "affect[ed] them or the neighborhood."

Similarly, the judge concluded plaintiffs failed to objectively establish any increased traffic generated by Gigi's, electing instead to rely on their own anecdotal and speculative testimony. Oceanport's Police Chief testified he discerned no additional traffic attributable to Gigi's. Rather, the Police Chief

explained plaintiffs' perceived increase in traffic may be attributable to the nearby racetrack and local school.

Regarding the dismissal of plaintiffs' nuisance claim, we are satisfied Judge Zazzali-Hogan's entry of "no judgment" is based on findings of fact that are adequately supported by the credible evidence presented at trial. R. 2:11-3(e)(1)(A).

To the extent we have not addressed any of plaintiffs' remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18